[No. B082976. Second Dist., Div. Five. Dec. 20, 1995.]

RICHARD CALDWELL, Plaintiff and Respondent, v.
PARAMOUNT UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

COUNSEL

Kohrs & Fiske, Conrad Kohrs and Michelle R. Williams for Defendant and Appellant.

Gronemeier & Barker, Alexander A. Molina and Dale L. Gronemeier for Plaintiff and Respondent.

OPINION

ARMSTRONG, J.—This case presents the sometimes knotty question of the proper application of the "shifting burdens of proof" applicable to employment discrimination cases as first set forth in *McDonnell Douglas Corp.* v. *Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817] (hereafter, *McDonnell Douglas*). Due to the confusion which is attendant to application of this legal concept in various trial and pretrial proceedings, we discuss its purpose and use at length below.

Plaintiff Richard Caldwell (Caldwell) sued Paramount Unified School District (the District)[1] for breach of contract, race and age discrimination in violation of the Fair Employment and Housing Act, and wrongful termination in violation of public policy.[2] A jury returned a special verdict in favor of the District on the race and age discrimination claims, and determined that Caldwell had breached his contract of employment with the District.[3] Caldwell brought a motion for new trial and for judgment notwithstanding the verdict. The trial court granted the former motion and denied the latter. The District appeals the order granting Caldwell a new trial, while Caldwell appeals the denial of his motion for judgment notwithstanding the verdict. We affirm the trial court's denial of Caldwell's motion for judgment notwithstanding the verdict, vacate the new trial order, and remand the matter to the trial court with directions to enter judgment for the District.

---

[1]Caldwell also sued three members of the board of education, Joseph Montoya, Vivian Hansen, and Janet Miller. The individual board members were dismissed from the suit pursuant to Government Code section 820.2, a decision with which our Supreme Court concurred in *Caldwell* v. *Montoya* (1995) 10 Cal.4th 972 [42 Cal.Rptr.2d 842, 897 P.2d 1320].

[2]The court granted a nonsuit as to the claim of wrongful termination in violation of public policy.

[3]The jury voted eight to four in favor of a finding that the District had not breached the employment contract; consequently, the jury did not return a definitive finding regarding that issue.

## Facts and Procedural History

Caldwell had been superintendent of the District for thirteen years when, on August 13, 1991, the board of education, by a three-to-two margin, elected not to renew his contract, which was due to expire on June 30, 1992. Caldwell presented evidence that his age was a factor in the decisions of Vivian Hansen and Janet Miller to vote for nonrenewal, and that his race was a factor in Joseph Montoya's no vote. These three individuals testified that neither age nor race played any part in their decisions, and detailed the nondiscriminatory reasons which led to their individual votes for nonrenewal.

The jury returned a special verdict, answering the following two questions in the negative: "Did defendant discriminate against plaintiff because of his race with regard to the employment contract?" and "Did defendant discriminate against plaintiff because of his age with regard to the employment contract?" Pursuant to the instructions on the special verdict form, the jury did not answer the questions "Was the proof of age [or race] discrimination direct or indirect?" or questions regarding the shifting burdens of production which apply to claims of discrimination based on indirect evidence.[4]

As noted, Caldwell moved for a new trial and for a judgment notwithstanding the verdict. His principal contention was that Hansen's unrebutted statements, made to a reporter and appearing in a newspaper article, provided direct evidence of age discrimination. Among the statements cited by Caldwell in support of his motion for new trial was the following: "We're trying to restructure around the way students learn, not around the way we administer. Caldwell is 66 years old and he wanted an extension to 70. Not that age is important, but this is someone at the end of his career, not at the beginning." Caldwell argued as well that there was no substantial evidence to support the jury's finding that he had breached his contract of employment. Finally, Caldwell asserted that the court improperly instructed the jury on the plaintiff's burden of proof of age and race discrimination. The court rejected Caldwell's first two contentions, but agreed that it had incorrectly instructed the jury on the burden of proof of employment discrimination, and granted Caldwell a new trial on that basis.

---

[4]Those special verdict questions read: "Did plaintiff perform a satisfactory job as superintendent prior to August 13, 1991?" "Was plaintiff qualified for the position of Superintendent?" "Did defendant articulate some legitimate non-discriminatory reasons, not based on race [age], for not offering plaintiff a new contract?" "Did plaintiff establish that the legitimate, nondiscriminatory reasons given by defendant were a pretext for race [age] discrimination?"

CONTENTS

On appeal, the District contends that the trial court erred in granting Caldwell's motion for new trial since (1) the jury was properly instructed regarding the parties' respective burdens of proof, (2) any error was invited by Caldwell's submission of an instruction substantially similar to the instruction given, and (3) the error, if any, had no effect on the outcome, and thus did not constitute proper grounds for a new trial. Caldwell also appeals, contending that the trial court erred in denying his motion for judgment notwithstanding the verdict.

DISCUSSION

### 1. *The District's appeal*

At the outset, we note that both state and federal legislation prohibit employers from discriminating against employees on the basis of age or race. (Gov. Code, § 12940, subd. (a); 42 U.S.C. § 2000e et seq.; 29 U.S.C. § 621 et seq.) Although state and federal antidiscrimination laws "differ in some particulars, their objectives are identical, and California courts have relied upon federal law to interpret analogous provisions of the state statute. [Citations.]" (*Mixon* v. *Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1316-1317 [237 Cal.Rptr. 884].)

### a. *McDonnell Douglas* and the shifting burdens of proof

The issue giving rise to the District's assignment of error in this case is the shifting burdens of proof applicable to claims of "disparate treatment" employment discrimination which rely on circumstantial evidence to prove discriminatory intent. ■ As the United States Supreme Court has explained, " '[d]isparate treatment' . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin." (*Teamsters* v. *United States* (1977) 431 U.S. 324, 335-336, fn. 15 [52 L.Ed.2d 396, 415, 97 S.Ct. 1843].) In order to prevail under the disparate treatment theory, an employee must show that the employer harbored a discriminatory intent. In most cases, however, the plaintiff will be unable to produce direct evidence of the employer's intent, but will instead have to rely on circumstantial evidence and the inferences that may be drawn therefrom. "Consequently certain rules regarding the allocation of burdens and order of presentation of proof have developed in order to achieve a fair determination of 'the elusive factual question of intentional discrimination.' " (*Mixon* v. *Fair Employment & Housing Com.*, *supra*, 192 Cal.App.3d at p. 1317, citing

*Texas Dept. of Community Affairs* v. *Burdine* (1981) 450 U.S. 248, 255, fn. 8 [67 L.Ed.2d 207, 216, 101 S.Ct. 1089].)

The Supreme Court first articulated the rules applicable to this type of employment discrimination case in *McDonnell Douglas, supra,* 411 U. S. 792. There, plaintiff Green, a mechanic at McDonnell Douglas, was laid off in the course of a general reduction in McDonnell Douglas's work force. After his discharge, he engaged in disruptive and illegal activity against McDonnell Douglas as part of his protest that his discharge was racially motivated. When McDonnell Douglas later advertised for qualified mechanic positions, Green applied for reemployment, but was not offered a job. Green brought suit, claiming that McDonnell Douglas failed to rehire him on account of his race and his civil rights activities. McDonnell Douglas denied the charge, maintaining that its failure to rehire Green was due to his participation in unlawful conduct against his employer. After a bench trial, the district court ruled that plaintiff's misconduct was sufficient to justify McDonnell Douglas's refusal to rehire, and that the latter's decision was based solely on plaintiff's participation in illegal activities. (*Green* v. *McDonnell-Douglas Corporation* (E.D.Mo. 1970) 318 F.Supp. 846, 850-851].)

The Court of Appeals reversed. It held that "when a black man demonstrates that he possesses the qualifications to fill a job opening and that he was denied the job which continues to remain open, we think he presents a prima facie case of racial discrimination." (*Green* v. *McDonnell Douglas Corporation* (8th Cir. 1972) 463 F.2d 337, 353.) The court acknowledged that "an applicant's past participation in unlawful conduct directed at his prospective employer might indicate the applicant's lack of a responsible attitude toward performing work for that employer" (*ibid.*), that is, a legitimate, business-related reason to deny employment. The Court of Appeals concluded, however, that the plaintiff "should be given the opportunity to show that the[] reasons offered by the Company were pretextual, or otherwise show the presence of racially discriminatory hiring practices" which affected the employer's decision. (*Ibid.,* fn. omitted.) While the court concluded that "[t]he district court did not use appropriate standards in determining whether McDonnell's refusal to hire Green was racially motivated" (*ibid.*), it did not articulate the standard to be applied on remand.

Against this backdrop, the Supreme Court addressed the question of the order and allocation of proof in a private action alleging employment discrimination. The court held that the plaintiff must carry the initial burden of establishing a prima facie case of racial discrimination. This may be done, the court said, "by showing (i) that he belongs to a racial minority; (ii) that

he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications." (*McDonnell Douglas, supra*, 411 U.S. 792, 802 [36 L.Ed.2d 668, 677].) The court concluded that, on the record before it, Green had established his prima facie case. Subsequent cases make clear that a plaintiff's prima facie burden is minimal. "The amount [of evidence] that must be produced in order to create a prima facie case is 'very little.' " (*Sischo-Nownejad* v. *Merced Community College Dist.* (9th Cir. 1991) 934 F.2d 1104, 1111]; see also *Texas Dept. of Community Affairs* v. *Burdine, supra*, 450 U.S. 248, 253 [67 L.Ed.2d 207, 215] ["The burden of establishing a prima facie case of disparate treatment is not onerous."].)

The Supreme Court went on to hold that "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." (*McDonnell Douglas, supra*, 411 U.S. 792, 802 [36 L.Ed.2d 668, 678].) If the employer proffers a nondiscriminatory reason for its employment decision, the burden then shifts back to the plaintiff to show that the employer's stated reason for the adverse employment decision was in fact pretext. (*Id.* at p. 804 [36 L.Ed.2d at pp. 678-679].) In short, the plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." (*Id.* at p. 805 [36 L.Ed.2d at p. 679].)

The Supreme Court remanded the case to the district court, holding that while the plaintiff had established a prima facie case of racial discrimination, and McDonnell Douglas had rebutted the presumption of discrimination with evidence of a race-neutral reason for its employment decision, the plaintiff was entitled to prove that the proffered reason was pretextual.[5]

Relying upon *McDonnell Douglas*, the trial court in this case instructed the jury on the burden of proof on the age and race discrimination claims, as follows:

"The plaintiff has the burden of proving by a preponderance of the evidence all of the facts necessary to establish:

"(1) A Violation of the California Fair Employment and Housing Act, or 'FEHA';

---

[5]Due to an erroneous ruling by the district court, the plaintiff had been denied the opportunity to conduct discovery regarding possible race-based reasons for McDonnell Douglas's decision not to rehire plaintiff. Consequently, plaintiff was entitled to a new trial after appropriate discovery.

"...................................................

"Discrimination in violation of . . . FEHA[] can be proved by direct evidence of discriminatory intent or by circumstantial (or indirect) evidence of discriminatory intent.

"...................................................

"In order for plaintiff to prove circumstantial evidence that his age and/or race was a motivating factor in that adverse employment decision, there is a three stage order of proof:

"(I) *For the first stage*, plaintiff has burden of proving in the first instance, in order to require the defendant to articulate reasons for its conduct, that:

"(1) Plaintiff was over forty years of age and/or non-Hispanic;

"(2) Plaintiff was qualified for the position of Superintendent; *and was satisfactorily performing in that position* [italics added];

"(3) Defendant did not renew plaintiff's contract; and

"(4) Plaintiff was replaced by a person who was younger and/or Hispanic;

"(II) *For the second stage*, if Plaintiff has met the foregoing burden, then it is the defendant's burden to articulate the legitimate non-discriminatory reason or reasons which it contends motivated its conduct towards the Plaintiff.

"(III) *For the third stage*, if defendant has shown a non-discriminatory reason or reasons which it contends actually motivated its conduct towards the Plaintiff, then Plaintiff must prove by a preponderance of the evidence that Defendant's stated reasons were merely a pretext for a discriminatory motive."

Just prior to reading the foregoing instruction, the trial court had instructed the jury that "[T]he plaintiff has the burden of proving by a preponderance of the evidence all of the facts necessary to establish . . . a violation of the California Fair Employment and Housing Act or FEHA." Immediately after reading the instruction based on *McDonnell Douglas*'s shifting burdens of proof, the trial court instructed the jury on the elements of plaintiff's claim of employment discrimination, as follows:

"Under the California Fair Employment and Housing Act or FEHA, it is an unlawful employment practice for an employer to make any adverse

employment decision against an employee when that employee's age is a motivating factor in the adverse employment decision and when the employee is over the age of 40."

"Under the California Fair Employment and Housing Act, FEHA, it is [an] unlawful employment practice for an employer to make any adverse employment decision against an employee when that employee's race is a motivating factor in the decision."

"To prove that race or age was a motivating factor, plaintiff need not prove that age or race was the sole reason or the determinative reason for the decision, but rather only that it was one of the reasons."

"A motivating factor is a factor which is an idea or belief which moves the will and induces action."

In ruling on Caldwell's motion for new trial, the trial court concluded that its instruction regarding the shifting burdens of proof was erroneous. Specifically, it found that the inclusion of the phrase "and was satisfactorily performing in that position" in the second element of the plaintiff's prima facie case misstated the law. In its statement of decision granting Caldwell a new trial, the court said: "The reason for granting this motion is that the court erroneously instructed the jury in instruction No. 2.60 that, in the first stage of the 3 stage order of proof, Plaintiff had the burden of proving that he was not only qualified for the position but was satisfactorily performing in that position. This was clearly an erroneous instruction as 'satisfactorily performing in that position' was not part of plaintiff's burden of proof. The order and burden of proof required in this type of case was established in *McDonnell Douglas Corp.* v. *Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817], which provides only that Plaintiff has the burden of showing that he was *qualified* for the position, not that he was qualified and satisfactorily performing in that position."

b. *The trial court misconstrued the requirements of McDonnell Douglas*

■ We disagree with the trial court's conclusion that the jury instruction on the shifting burdens of proof was erroneous. The trial court, relying on the language of *McDonnell Douglas*, concluded that proof of satisfactory job performance is not an element of a plaintiff's prima facie case of discrimination. *McDonnell Douglas* provides no authority for this conclusion. In *McDonnell Douglas*, the plaintiff was not employed by the defendant at the time that the adverse employment decision was made; thus there could be no

requirement that the plaintiff prove in his prima facie case that he was satisfactorily performing his position. Indeed, the Court in *McDonnell Douglas* made clear that its iteration of a plaintiff's prima facie case was not to be applied rigidly. After laying out the elements of a prima facie case, the Court cautioned that "The facts necessarily will vary in [discrimination] cases, and the specification above of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." (411 U.S. at p. 802, fn. 13 [36 L.Ed.2d at pp. 677-678].) The Sixth District Court of Appeal has stated the prima facie case for discriminatory discharge as follows: "(1) complainant belongs to a protected class; (2) his job performance was satisfactory; (3) he was discharged; and (4) others not in the protected class were retained in similar jobs, and/or his job was filled by an individual of comparable qualifications not in the protected class." (*Mixon* v. *Fair Employment & Housing Com., supra*, 192 Cal.App.3d 1306, 1318; accord, *Nesbit* v. *Pepsico, Inc.* (9th Cir. 1993) 994 F.2d 703, 704]; *Rose* v. *Wells Fargo & Co.* (9th Cir. 1990) 902 F.2d 1417, 1421]; *Palmer* v. *United States* (9th Cir. 1986) 794 F.2d 534, 537 ["An employee may establish a prima facie case of age discrimination under the disparate treatment theory by showing that he: '. . . (ii) was performing his job in a satisfactory manner. . . .' "]; cf. *Davenport* v. *Riverview Gardens School Dist.* (8th Cir. 1994) 30 F.3d 940, 944] [plaintiff not required to establish "adequate performance" for prima facie case, but only show that he was qualified].[6]) Thus, the instruction correctly articulated the *McDonnell Douglas* shifting burdens of proof.

---

[6]Caldwell relies on *Davenport* for the proposition that satisfactory performance is not an element of a plaintiff's prima facie case. In *Davenport,* the plaintiff, a teacher and coach, was terminated after four years of employment. The employer cited four reasons for its employment action, including instances where the plaintiff had broken school rules, had been insubordinate, and had displayed an adversarial and confrontational attitude toward the school principal. The plaintiff did not dispute that the incidents cited by the employer had occurred, but maintained that the proffered reasons were merely pretextual, and that similar infractions committed by those similarly situated did not result in termination. The trial court granted summary judgment, ruling that plaintiff had failed to establish a prima facie case by proving that he had been satisfactorily performing his position.

The appellate court found that *plaintiff had indeed established his prima facie case, since he* had only to prove that he was qualified for the position, not that he was adequately performing the job. (30 F.3d at p. 944.) This conclusion is consistent with *McDonnell Douglas,* where the Supreme Court stated that the prima facie showing required in a given case must be consonant with the facts of the case. (411 U.S. at p. 802, fn. 13 [36 L.Ed.2d at pp. 677-678].) Whether the second element of a plaintiff's prima facie case of employment discrimination is described as "qualification for the position" or "satisfactory job performance," it is clear that, where a plaintiff claims not that he was a model employee but only that other employees with equivalent foibles did not suffer his fate, an employer cannot prevail simply by citing deficiencies in the plaintiff's employment record.

### c. *The adequacy of the plaintiff's prima facie showing is a question of law for resolution by the trial court*

■ Notwithstanding that the court's instruction accurately stated the law, the court erred in so instructing the jury. This is so because, as will appear from our discussion below, whether or not a plaintiff has met his or her prima facie burden, and whether or not the defendant has rebutted the plaintiff's prima facie showing, are questions of law for the trial court, not questions of fact for the jury.

Our colleagues in Division One of this court recently explained the workings of the *McDonnell Douglas* shifting burdens of proof as follows: "If the employee establishes a prima facie case, 'the employer must offer a legitimate reason for his actions . . . .' However, the burden of persuasion never shifts to the employer; it remains at all times with the employee. . . . 'If the plaintiff establishes a prima facie case, the defendant bears only a burden of going forward with additional evidence of legitimate nondiscriminatory reasons. The defendant does not take on a burden of persuasion.' . . . [¶] The employer, in order to meet its burden of going forward with additional evidence, 'need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the [employee]. To accomplish this, the [employer] must clearly set forth, through the introduction of admissible evidence, the reasons for the [employee's] rejection. The explanation provided must be legally sufficient to justify a judgment for the [employer]. If the [employer] carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.' " (*Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 663-664 [8 Cal.Rptr.2d 151], internal citations omitted.)

In other words, once the employer produces evidence of a nondiscriminatory reason for its employment decision which, if believed by the fact finder, will support a verdict in the employer's favor, "the *McDonnell/Burdine* presumption 'drops from the case' and the factfinder must decide upon all of the evidence before it whether defendant intentionally discriminated against plaintiff. [Citation.] In short, the trier of fact decides whether it believes the employer's explanation of its actions or the employee's." (*Mixon* v. *Fair Employment & Housing Com., supra,* 192 Cal.App.3d at p. 1319.) That is to say, once "the defendant has succeeded in carrying its burden of production, the McDonnell Douglas framework—with its presumptions and burdens—is no longer relevant." (*St. Mary's Honor Center* v. *Hicks* (1993) 509 U.S. 502,

510-511 [125 L.Ed.2d 407, 418, 113 S.Ct. 2742, 2749].) "The defendant's 'production' . . . having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' because of his race [citation]." (*Ibid.*)

Thus, the construct of the shifting burdens of proof enunciated in *McDonnell Douglas* is an analytical tool for use by the trial judge in applying the law, not a concept to be understood and applied by the jury in the factfinding process. The device ensures, first, that patently meritless claims, such as those brought by persons not members of a protected class, or those based on positions which are removed from the job market without being filled, do not proceed to trial. (*Texas Dept. of Community Affairs* v. *Burdine, supra,* 450 U.S. 248, 253-254 [67 L.Ed.2d 207, 215-216].) Secondly, and more importantly, the shifting burden ensures that an employer who can articulate a nondiscriminatory reason for the adverse employment decision will not avoid liability for discrimination if in fact the proffered reason is merely pretextual. (*McDonnell Douglas, supra,* 411 U.S. 792, 804 [36 L.Ed.2d 668, 678-679].) The Supreme Court has explained the rationale of the shifting burdens as follows: "Usually, assessing the burden of production helps the judge determine whether the litigants have created an issue of fact to be decided by the jury. In a Title VII case, the allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." (*Texas Dept. of Community Affairs* v. *Burdine, supra,* 450 U.S. 248, 255, fn. 8 [67 L.Ed.2d 207, 216].)

For this reason, the issues raised by the shifting burdens of proof are amenable to pretrial proceedings. Thus, in the usual case, the first two prongs of the three-part *McDonnell Douglas* test, that is, whether the plaintiff has stated a prima facie case of discrimination and whether the employer has rebutted that prima facie showing, will be tested prior to trial, either by demurrer, by motion for summary judgment, or by some similar procedure.[7] Commonly, an employer will seek summary judgment, arguing that the plaintiff has not satisfied one of the four elements of the prima facie case and thus is not entitled to proceed to trial, or that there is no disputed issue of material fact regarding the motivation behind the adverse employment decision. (See, e.g., *Nesbit* v. *Pepsico, Inc., supra,* 994 F.2d 703, 704; *Rose* v. *Wells Fargo & Co., supra,* 902 F.2d 1417, 1421; *Palmer* v. *United States, supra,* 794 F.2d 534, 537; *Davenport* v. *Riverview Gardens School Dist.,*

---

[7]The plaintiff, of course, must plead a prima facie case in order to survive demurrer. Accordingly, the complaint must include the prima facie elements of employment discrimination specified in *McDonnell Douglas*.

*supra*, 30 F.3d 940, 944.) In such pretrial proceedings, the trial court will be called upon to decide if the plaintiff has met his or her burden of establishing a prima facie case of unlawful discrimination. If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing. In short, by applying *McDonnell Douglas*'s shifting burdens of production in the context of a motion for summary judgment, "the judge [will] determine whether the litigants have created an issue of fact to be decided by the jury." (*Texas Dept. of Community Affairs* v. *Burdine, supra*, 450 U.S. 248, 255, fn. 8 [67 L.Ed.2d 207, 216].)

Indeed, this state's summary judgment law, Code of Civil Procedure section 437c, provides a particularly suitable means to test the sufficiency of the plaintiff's prima facie case and/or of the defendant's nondiscriminatory motives for the employment decision.[8] Subdivision (o)(2) of that law sets forth the burdens of proof of the respective parties in a summary judgment motion, as follows: "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denial of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (o)(2); see generally, *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573 [37 Cal.Rptr.2d 653].) Thus, the burdens of proof for purposes of a defendant's motion for summary judgment are precisely the same as those mandated by *McDonnell Douglas*.

Similarly, a motion for nonsuit (or, in a bench trial, a motion pursuant to Code of Civil Procedure section 631.8) following plaintiff's case-in-chief would be an appropriate avenue to test whether the employee has met the initial burden posed by the prima facie case. That is, before conflicting

---

[8]We recognize that our colleagues on the Sixth District Court of Appeal have stated in dicta that the shifting burdens of proof "have no direct application to a defendant's motion for summary judgment." (*Martin* v. *Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1730 [35 Cal.Rptr.2d 181].) For the reasons stated in the text, we believe that the requirements of *McDonnell Douglas* may be fully satisfied within the context of such a motion.

evidence is presented, the defendant may call upon the trial court to determine whether plaintiff's evidence, if believed by the jury, raises a reasonable inference of discriminatory motive on the part of the employer; in this regard, the trial court would apply the ordinary rules applicable to nonsuits. (Code Civ. Proc., § 581c; see also *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839 [206 Cal.Rptr. 136, 686 P.2d 656]; 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 405 et seq., p. 408, and cases cited therein.) Likewise, of course, following the defendant's case-in-chief, the plaintiff may seek a directed verdict on the basis of the legal insufficiency of the employer's stated reasons for the employment decision. In ruling on that motion, the trial court again would apply the ordinary rules of directed verdicts. (Code Civ. Proc., § 630; see also *Newing v. Cheatham* (1975) 15 Cal.3d 351, 358-359 [124 Cal.Rptr. 193, 540 P.2d 33]; 7 Witkin, Cal. Procedure, *supra*, Trial, § 408 et seq., p. 408, and cases cited therein.) By the time that the case is submitted to the jury, however, the plaintiff has already established his or her prima facie case, and the employer has already proffered a legitimate, nondiscriminatory reason for the adverse employment decision, leaving only the issue of the employer's discriminatory intent for resolution by the trier of fact. Otherwise, the case would have been disposed of as a matter of law for the trial court. That is to say, if the plaintiff cannot make out a prima facie case, the employer wins as a matter of law. If the employer cannot articulate a nondiscriminatory reason for the adverse employment decision, the plaintiff wins as a matter of law. In those instances, no fact finding is required, and the case will never reach a jury.

In short, if and when the case is submitted to the jury, the construct of the shifting burdens "drops from the case," and the jury is left to decide which evidence it finds more convincing, that of the employer's discriminatory intent, or that of the employer's race- or age-neutral reasons for the employment decision. Because the only issue properly put to the jury here on the issue of employment discrimination was whether the District's decision to not renew Caldwell's contract was motivated by age or race, the shifting burdens of proof were irrelevant to the jury deliberations. Consequently, the trial court should not have instructed the jury on *McDonnell Douglas*'s three-stage burden of proof.[9]

Based on the foregoing analysis, we offer this advice to those practicing employment law: If you hope to prevail in your discrimination claim, or

---

[9]We note that the trial court was not alone in erroneously concluding that the jury was required to apply the *McDonnell Douglas* shifting burdens of proof. Both Caldwell and the District submitted jury instructions which set forth the elements of the plaintiff's prima facie case and the defendant's burden of producing rebuttal evidence. Indeed, a recent decision of the Sixth District Court of Appeal, *Ewing v. Gill Industries, Inc.* (1992) 3 Cal.App.4th 601 [4 Cal.Rptr.2d 640], approved the use of a jury instruction regarding the shifting burdens. The appellate court noted with approval the trial court's conclusion that the plaintiff in that case

choose to defend an employment discrimination case, solely on the basis of the other party's failure to satisfy one of the elements of *McDonnell Douglas*'s intermediate burdens (that is, the plaintiff's prima facie case or the defendant's legitimate nondiscriminatory reasons), you must seek a determination from the trial court, by means of any of the vehicles at a litigant's disposal, that you are entitled to judgment as a matter of law. If you do not do so, and the case is submitted to the trier of fact, the intermediate burdens set forth in *McDonnell Douglas* will fall away, and the fact finder will have only to decide the ultimate issue of whether the employer's discriminatory intent was a motivating factor in the adverse employment decision.

### d. *Order granting new trial*

■ The grant of a new trial is a proper remedy for the giving of an erroneous jury instruction when the improper instruction materially affected the substantial rights of the aggrieved party. (Code Civ. Proc., § 657.) The standard of review of a new trial order has recently been stated thus: "On appeal from an order granting a new trial, the sole question is whether the trial court abused its discretion. (*Seimon* v. *Southern Pac. Transportation Co.* (1977) 67 Cal.App.3d 600, 604 [136 Cal.Rptr. 787].) This court makes all presumptions in favor of the order as against the verdict, and this court will reverse only if manifest abuse of discretion is shown. (*Miller* v. *National American Life Ins. Co.* (1976) 54 Cal.App.3d 331, 345 [126 Cal.Rptr. 731].) When a new trial was granted on the basis of an erroneous instruction, the order 'will not be disturbed unless the questioned instruction was absolutely accurate and under no reasonable interpretation could possibly have misled or confused the jury. [Citations.]' (*Christian* v. *Bolls* (1970) 7 Cal.App.3d 408, 415 [86 Cal.Rptr. 545].)" (*Hand Electronics, Inc.* v. *Snowline Joint Unified School Dist., supra,* 21 Cal.App.4th 862, 871.)

■ Applying the foregoing principles to this case, we conclude that the trial court abused its discretion in granting a new trial. As stated above,

---

had made out his prima facie case as a matter of law. (*Id.* at p. 611.) Thus, had the question of the propriety of instructing the jury on the shifting burdens been squarely posed in that case, we think it fair to conclude from the court's comments that it would agree that the jury should not have been instructed to make a factual finding concerning the plaintiff's prima facie case when the issue was properly one of law to be decided by the trial court.

We note as well that the fact that Caldwell submitted a proposed instruction regarding the shifting burdens of proof does not provide a basis for rejecting his claim of error as invited, for " ' ". . . the rules applicable to . . . invited error or to estoppel[] have no application when an appellate court is considering the propriety of an order granting a new trial. If the trial court had denied the new trial such error would be considered waived by failure to object. But the trial court has broad discretion in considering motions for a new trial." . . .' " (*Hand Electronics, Inc.* v. *Snowline Joint Unified School Dist.* (1994) 21 Cal.App.4th 862, 871 [26 Cal.Rptr.2d 446], internal citations omitted.)

although it was unnecessary to instruct the jury in the shifting burdens of proof, since the plaintiff's prima facie case was made and rebutted before the case was submitted to the jury, the instruction given was an accurate statement of the law. Moreover, and more importantly, it is undisputed that the jury was correctly instructed on the issue that was properly put to them, to wit: that discrimination is established if age or race was a motivating factor in the employment decision. Based on that properly given instruction, the jury found that the District's decision to terminate Caldwell was not motivated by age or race. The jury was specifically asked on the special verdict form, "Did defendant discriminate against plaintiff because of his race with regard to the employment contract?" and "Did defendant discriminate against plaintiff because of his age with regard to the employment contract?" The jury answered both questions in the negative. The jury never entertained the question of whether plaintiff had made his prima facie showing, because they were instructed to skip those questions in the event they found no discrimination. Consequently, the jury instructions regarding plaintiff's prima facie case never came into play in the deliberative process; under no reasonable interpretation could the extraneous instruction possibly have misled or confused the jury. The trial court thus abused its discretion in ordering a new trial.

### 2. *Caldwell's appeal*

Caldwell also appeals, contending that the trial court erred in denying his motion for judgment notwithstanding the verdict. Caldwell cites two bases for the trial court's purported error: First, that the statements of Hansen referring to Caldwell's age, which Hansen acknowledged were accurately reported, provide direct and unrebutted evidence that age was a motivating factor in Hansen's decision to not renew Caldwell's contract. Caldwell also maintains that there is no substantial evidence in the record to support the jury's finding that he was in breach of his employment contract.

Hansen admitted that the following publicly reported statements concerning Caldwell accurately reflected her comments: " 'I am not opposed to Caldwell,' she said. But then added the superintendent is 66 years of age and asking for a four year extension. 'I see us restricting,' said Hansen, 'Not doing it the way we have for years.' [¶] She said she feels the district needs leadership that is younger, with fresh ideas. 'We are at a crossroads.' "

Hansen was also reported saying, " 'We're trying to restructure around the way students learn, not around the way we administer. Caldwell is 66 years old and he wanted an extension to 70. Not that age is important, but this is someone at the end of his career, not at the beginning.' "

Caldwell states: "At the conclusion of trial, the court properly instructed the jury that the defendant was liable for age discrimination if age was in any way a 'motivating factor' in the employment decision. The foregoing statements by Hansen unequivocally meet this legal standard." The question before us, however, is not whether these statements constitute substantial evidence to support a finding of age discrimination; clearly they would have supported a verdict in plaintiff's favor, had the jury rendered such a verdict. ▪ Our task here is very different: we must determine whether the evidence presented supports the verdict actually rendered. In reviewing the evidence, we must resolve all conflicts in favor of the verdict, and indulge in all reasonable and legitimate inferences in order to uphold the verdict. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) "It is an elementary . . . principal of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury." (*Ibid.*)

▪ Here, each of the three board members who voted against renewal of Caldwell's contract explained the reasons for their votes at length. All of the reasons offered by these individuals in support of their employment decision were legitimate, job-related reasons. For instance, Hansen testified, among other things, that Caldwell "had lost touch with what was going on in the District"; that "his management style . . . [did not] serve the District well"; that he "had very low expectations for students"; that Hansen "did not have a very good working relationship" with Caldwell; that he continually failed to provide prioritized lists of budget cuts; and that she disagreed with his decision, regarding a special pilot program in bilingual elementary education, to replace the principal in the middle of the six-year program solely for the purpose of routine rotation of principals throughout the elementary schools. Moreover, evidence was presented to corroborate Hansen's dissatisfaction with Caldwell long before the vote on his contract. Simply put, the jury was entitled to, and did, believe Hansen and the other board members when they testified that neither age nor race played a part in their decision. There is no basis upon which this court may reverse that finding.

For these same reasons, Caldwell's contention that judgment notwithstanding the verdict should have been entered due to insufficient evidence of Caldwell's breach of his employment contract must fail. Substantial evidence supports the jury's finding of breach, including multiple witnesses who testified that Caldwell completely delegated all of his supervisory duties

and played no role in the District's curriculum, budget and personnel matters, nor over particular areas of responsibility, such as adult education. The jury's finding will not be disturbed on appeal.

## DISPOSITION

The order denying Caldwell's motion for judgment notwithstanding the verdict is affirmed, the order granting a new trial is vacated, and the trial court is instructed to enter judgment for the District. The District is awarded its costs on appeal.

Turner, P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied January 17, 1996, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied March 14, 1996.