Filed 7/3/13  King v.  County of Ventura CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KYLE KING,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF VENTURA,<br><br>    Defendant and Respondent. | 2d Civil No. B242411<br>(Super. Ct. No. 56-2009-00357224-CU-OE-VTA)<br>(Ventura County) |

Appellant Kyle King's employer, respondent County of Ventura (County), dismissed him from probation less than two months after the County investigated his complaints of misconduct by his initial training officer.  King sued the County for retaliation under the California Fair Employment and Housing Act (FEHA).  (Gov. Code, § 12940.)[1]  The trial court granted the County's motion for summary judgment.

As we shall explain, King established a prima facie case giving rise to a rebuttable presumption of retaliation.  The County, however, successfully rebutted that presumption by demonstrating a legitimate, non-retaliatory reason for King's dismissal. Once the presumption of retaliation disappeared, the burden shifted to King to raise a triable issue of material fact that the County was more likely than not motivated by a retaliatory intent.  He failed to meet that burden.  We affirm.

_____

[1] All statutory references are to the Government Code unless otherwise stated.

FACTS AND PROCEDURAL BACKGROUND

On May 4, 2008, King and coworker Cory Coffey began a six-month employee probationary period as fire specialists with the Fire Prevention Bureau (Bureau) of the Ventura County Fire Department (Department). The fire marshal who headed the Bureau assigned Larry Williams as their supervisor and Aaron Greer as their training officer. At that time, the fire marshal knew Greer "was not going to be happy and was not happy [with the] assignment." Before King and Coffey reported for work, Williams candidly told them that there were problems with Greer and asked them to report any inappropriate communications or conduct by Greer.

During the first week of training, Greer started talking negatively about other Department employees, particularly the fire marshal.[2] King and Coffey listened to "basically eight hours of negative and improper comments about the [Department]." Greer told them: "Nobody there knows what they're doing. Everybody has their heads up their [ass]." He described an affair the fire marshal purportedly had, or was having, with the Department's assistant chief. Greer told King and Coffey that the assistant chief's wife, after learning of the affair, had created a scene at the Department's headquarters and then vandalized the fire marshal's home by spray-painting the word "whore" on her driveway. Greer told them to watch the couple's body language at the next meeting, as "the fire was still burning."

Greer also described the fire marshal's purported behavior with other Department employees, saying "she sleeps around with everybody, all the line guys." He told King and Coffey that the fire marshal had discovered that one of her former male sex partners, who also was a County employee, had died from an AIDS-related illness. Greer stated the fire marshal subsequently was tested for the HIV virus, and as word spread through the Department, approximately 12 male officers with whom she had been sexually involved sought reimbursement from the union for the costs of testing. Greer

---

[2] Due to the nature of Greer's comments, we refer to the fire marshal by her title and identify other Department personnel only where necessary. The record reflects that Greer made derogatory comments about a number of Department employees, but for the most part, their identities are irrelevant to the resolution of this appeal.

warned King that the fire marshal was still "on the prowl," and was eyeing King as a possible partner.

Uncomfortable with these comments, King and Coffey complained to Williams. They reported that Greer was spending a great deal of training time discussing the fire marshal's sex life and who was sleeping with whom in the Department. Williams agreed that the comments were inappropriate for the work place and discussed their concerns with Pam Mack, the Department's Human Resources Director. Mack instructed Williams to obtain written statements from King and Coffey. After receiving the statements, Tom Dorch of the County Executive Office investigated the complaints. Mack and Dorch repeatedly assured King and Coffey that the complaints would remain confidential. King and Coffey also were told not to make any further complaints about Greer. The County acknowledges "that something approximating the claimed misbehavior did occur."

After their meeting with Dorch, King felt he was getting the "cold shoulder" from formerly friendly coworkers. One of the coworkers, Inspector Richard Martinez, approached Coffey and said he knew that she and King had "told on" Greer. When King and Coffey told Mack what Martinez had said, Mack acknowledged a "leak" and said they were searching through Department e-mails to determine its source.

Following the investigation, the fire marshal, who was aware of the complaints, assigned Rodrigo Torres as King and Coffey's supervisor. The fire marshal told Torres she thought he "could provide a much better training environment for [them]." Torres claims he was not informed of either the complaints or the investigation.

At the time of the supervisorial transfer on June 8, 2008, Greer told Torres that both probationers were performing satisfactorily. Greer provided Torres with their training verification checklists, which are used by the Bureau as a guide in the training of new personnel. The checklists showed the areas that needed to be covered during training and also verified that such areas were covered. Torres denied any knowledge of the checklists.

3

Torres assigned King to clerical duties at the Department's main public counter and placed Coffey in a different clerical position. Torres assigned an experienced, trusted employee, Mark Enneking, to train King at the counter. According to Enneking, "[w]orking at the Public Counter can be stressful as the Counter can get busy. As part of the duties I handled, I would quote the public applicable fees for a permit. This entailed looking up the fee schedules and making certain calculations. At times the schedules themselves could be confusing." Enneking claims that Torres never asked him for his input or opinion on King's work performance and that, in Enneking's view, King's performance at the counter was satisfactory.

On July 15, 2008, Torres gave King a written probationary performance review which stated King "need[s] improvement" in 7 of the 25 categories. The review indicated that King should continue to study and learn Department policies and procedures, ensure that documents are completed accurately and in a timely manner, improve on attention to detail, ensure that personal and public safety is not compromised, complete tasks as assigned and display ability to make appropriate decisions. The review did not include any specific examples of performance deficiencies.

Torres and King orally discussed the areas in which he needed to improve. King agreed with some of the criticisms, particularly improving his knowledge of certain codes. Torres claims that he told King at that time, and again on August 4, 2008, that he was not on the road to completing probation. King contends that no one ever told him he was in danger of dismissal.

While observing King at the counter, Torres noted "multiple transactions . . . where the documents were incomplete and the forms were incorrect." On August 1, 2008, Torres discovered that King had not properly "closed" the public counter. King had left on the TVs and had stuffed the unfolded flags in a drawer. Torres subsequently recommended that King be dismissed from probation. On August 28, 2008, the fire marshal called King into her office and gave him a written notice of probationary dismissal, which she had signed. The notice gave no reasons for his dismissal. When King asked why he was being dismissed, Torres "showed [him] two mistakes that [he]

4

had made three weeks prior on charging somebody wrong at the counter." The fire marshal also stated: "We don't think you're a good fit for this [D]epartment." The fire chief denied King's request for a hearing to seek clarification of the reasons for his termination. A few days after his dismissal, Torres discarded King's training file. Approximately five weeks later, the County dismissed Coffey from probation.

While he was supervising King, Torres prepared an activity/event log documenting King's performance. In addition to noting the probationary performance review meeting on July 15, 2008, the log lists three specific performance issues that occurred prior to King's dismissal. The first and most significant incident occurred when King was on arson patrol on July 5, 2008. King was having trouble seeing while driving at night in a poorly lit area of Fillmore and asked permission to leave his shift early. The log states that Torres "offer[ed] to pick [King] up but he has already returned and is in the HQ parking lot." It further states that when King returned from patrol, Torres "explained [his] concern with [King's] poor use of judgment in driving a county vehicle when he was not able to see well at night."

King disputes Torres's account of the incident. King testified that when he called Torres to report the issue, Torres responded: "Oh, no problem. Just come on back." Torres also said: "It's not an issue. Don't worry about it." King claims he did not realize there was an issue until it came up during his performance review.

The second incident in the log occurred on July 8, 2008, when King "turn[ed] in his timecard unsigned and without required ICS-214 for 4th of July." According to Torres, he had to ask King three separate times to sign and turn in his timecard. King claims he signed and turned in his timecard as requested.

The third incident was King's failure to turn off the TVs and to properly fold the flags when he closed the office on August 1, 2008. King asserts that after Torres counseled him on appropriate "closing" procedures, King had a coworker show him how to correctly fold the flags.

The log further notes that following King's dismissal, Torres received "copies of multiple incoming transmittals, receipts and inspection request with mistakes

5

and not filled out completely."  The log reflects that the Department concluded that King was responsible for "[a]ll discrepancies," and issued refunds to customers totaling several thousand dollars.

Additionally, the record reflects that King observed a "small grass fire" when he was on arson patrol on July 5, 2008.  King noted the grass fire in his daily activity log but did not describe what he did in response to the fire.  King responds that "[a]t the time, I had not been instructed on what to write in my log when I came upon a scene where fire department personnel were already there.  I did note the fire in my log, but did not include any facts."  King did, however, record specific details about other matters, including his dinner plans.

Following his dismissal, King filed a complaint against the County for retaliation in violation of section 12940, wrongful termination and breach of contract.  He claims he was dismissed because he was perceived as a "snitch."  The County moved for summary judgment.  King opposed the motion, asserting that triable issues of material fact exist regarding whether he was dismissed because of his complaints about Greer.  The trial court granted the motion.  Relying upon *Morgan v. Regents of University of Cal.* (2000) 88 Cal.App.4th 52 (*Morgan*), the court determined that the County had established "that the person responsible for the decision to terminate plaintiff, Rod Torres, had no knowledge that [King] or anyone else had made a complaint about Greer and was unaware of the investigation into [King's] complaint."  The trial court determined that King "offers nothing but rank speculation in response, and this is not specific or substantial enough to meet his burden."

The trial court also determined that Torres had legitimate, non-retaliatory reasons for recommending King's dismissal.  The court stated:  "It is undisputed that his evaluation in July, 2008, indicated [King] needed improvement.  He had to be asked three times to turn in his time card, and it wasn't signed.  Plaintiff omitted information from phone messages, inspection requests, and applications and made fee calculation errors."  The court observed that "[a]t best, plaintiff complains that he received no training and

6

was assigned to difficult assignments. But there is no indication that this occurred because of his complaint." King appeals.

## DISCUSSION

### *Standard of Review*

We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We apply the same rules and standards as the trial court, but "'. . . are not bound by the trial court's stated reasons or rationales. . . .'" (*Suarez v. Pacific Northstar Mechanical, Inc.* (2009) 180 Cal.App.4th 430, 436.) Summary judgment must be granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar,* at p. 850, fn. omitted.) We view the facts in the light most favorable to the nonmoving party and assume that, for purposes of our analysis, his version of all disputed facts is correct. (*Sheffield v. Los Angeles County Dept. of Social Services* (2003) 109 Cal.App.4th 153, 159.)

### *First Cause of Action for Retaliation*

#### *1. Shifting Burdens in Retaliation Cases*

King contends the County violated FEHA by dismissing him from probation in retaliation for his complaints about Greer. As the County points out, a probationary employee ordinarily can be terminated without good cause, notice or a hearing. (*California School Employees Assn. v. Governing Bd. of East Side Union High School Dist.* (2011) 193 Cal.App.4th 540, 543, fn. 2; see *Phillips v. Civil Service Com.* (1987) 192 Cal.App.3d 996, 1000 ["[a] probationary employee of a public agency may be dismissed without a hearing and without judicially cognizable good cause"].) It is unlawful, however, to retaliate against an individual who has complained about, or filed a complaint regarding, sexual harassment or hostile work environment. (§ 12940, subd. (h).)

Because plaintiffs in employment retaliation cases generally lack direct evidence of the employer's retaliatory intent, "courts rely on a system of shifting burdens to aid the presentation and resolution of such claims." (*Morgan, supra,* 88 Cal.App.4th at p. 68.) Under the three-part test developed in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, "(1) the complainant must establish a prima facie case of [retaliation]; (2) the employer must offer a legitimate reason for [its] actions; (3) the complainant must prove that this reason was a pretext to mask an illegal motive." (*Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 662.)

To establish a prima facie case of retaliation, a plaintiff must show that he engaged in a protected activity, that his employer subjected him to an adverse employment action, and that a "causal link" existed between the protected activity and the employer's action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) If the plaintiff establishes a prima facie case, a rebuttable presumption of retaliation arises and the burden shifts to the employer to rebut the presumption with evidence that its action was taken for a legitimate reason. (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 355-356; *Yanowitz*, at p. 1042.) If the employer does so, the presumption of retaliation disappears, and the burden shifts back to the plaintiff, who must offer evidence demonstrating that the employer's justification is a pretext for retaliation, or offer additional evidence of retaliation. (*Guz,* at p. 356; *Yanowitz,* at p. 1042; *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388-389 (*McRae*).)

"[W]hether or not a plaintiff has met his or her prima facie burden, and whether or not the defendant [employer] has rebutted the plaintiff's prima facie showing, are questions of law for the trial court, not questions of fact for the jury." (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 201 (*Caldwell*).) In other words, "if the plaintiff cannot make out a prima facie case, the employer wins as a matter of law. If the employer cannot articulate a nondiscriminatory reason for the adverse employment decision, the plaintiff wins as a matter of law. In those instances, no fact finding is required, and the case will never reach a jury." (*Id.* at p. 204.)

8

## 2. *Prima Facie Case of Retaliation*

There is no dispute that King engaged in a protected activity when he reported Greer's misconduct, and that he suffered an adverse employment action when he was dismissed from probation. The dispute centers on whether King has met his prima facie burden of showing that a causal link existed between the two. Direct evidence of retaliatory intent is not required to prove causation. (*Flait v. North American Watch Corp*. (1992) 3 Cal.App.4th 467, 478.) Rather, "'[t]he causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision."' [Citation.]" (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615.) This burden is "not onerous" and the evidence required to sustain it is minimal. (*Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1751; *Caldwell, supra,* 41 Cal.App.4th at p. 197.)

The County asserts that King cannot show a causal link because the uncontroverted evidence established that Torres was unaware of the protected activity when he recommended King's dismissal. The County relies heavily upon *Morgan,* in which the plaintiff alleged that his layoff was due to racial discrimination. After an arbitrator found that legitimate business reasons motivated the layoff, the plaintiff unsuccessfully applied to be rehired, and filed an employment discrimination action. (88 Cal.App.4th at p. 62.) The Court of Appeal concluded that summary judgment was proper because there was no evidence that plaintiff was qualified for the positions he had sought or that the decision-makers who denied his applications knew of his prior discrimination complaint. (*Id.* at pp. 72-80.) Although plaintiff established that certain employees were aware of the complaints, he was unable to show that any of those employees were involved in the various departments' decisions not to hire him. (*Id.* at p. 70.) The court observed that "each of the individuals who decided not to hire [plaintiff] for a particular position disclaimed knowledge of the fact that [he] had previously filed a

9

grievance against the [employer]. Without such knowledge, these individuals could not have acted in retaliation for [plaintiff's] filing of the grievance." (*Id.* at p. 74.)

The difference here is that Torres was not the *only* individual involved in King's dismissal. As King's supervisor, Torres had authority to recommend King's rejection from probation, but that decision had to be approved at a higher level. The fire marshal admitted during her deposition that "[a] lot of [dismissal] decisions are based on recommendations from . . . direct supervisors. So again, there's multiple people included in the decision-making process." She acknowledged that if the fire chief said we are not, you know, dismissing this person, then he would not be dismissed.

The *Morgan* court recognized that when employment decisions involve more than one level of review, "the final decision may be influenced by the discriminatory intent of individuals playing a role *at any point* in the decisionmaking process." (*Morgan, supra,* 88 Cal.App.4th at p. 74, italics added.) King established that the fire marshal, as the head of the Bureau, was aware of the nature of the protected activity and of the investigation. She also was the principal target of Greer's inappropriate comments. Following the investigation, the fire marshal reassigned King and Coffey to Torres for supervision and training. Less than two months later, she authorized King's dismissal. Given the fire marshal's knowledge of King's complaints and her personal involvement in reassigning and dismissing King within a two-month period, we conclude that King made the "minimal" evidentiary showing necessary to sustain a prima facie case of retaliation. (See *McRae, supra,* 142 Cal.App.4th at p. 388; *Caldwell, supra,* 41 Cal.App.4th at p. 197.)

3. *Legitimate, Non-Retaliatory Reason for Dismissal*

Once King established a prima facie case of retaliation, the burden shifted to the County to show a legitimate, non-retaliatory reason for his dismissal. (*Caldwell, supra,* 41 Cal.App.4th at p. 201.) This is a burden of production, not persuasion. (*Ibid.*) The employer need not persuade the court that it was actually motivated by the proffered reasons. It is only required to raise a genuine issue of fact as to whether it retaliated against the employee, by setting forth admissible evidence of its reasons for the

10

dismissal.  (*Id.* at pp. 200-201.)  The employer's explanation need not be "sound, fair, or correct, but only colorable enough that a rational jury could believe it to have been the employer's true motivation.  [Citation.]"  (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 112, fn. 12.)

The County proffered substantial evidence of King's substandard performance during his probation.  This included evidence that King exercised poor judgment by driving a County vehicle while experiencing night blindness, failing to report the outcome of a brush fire, making numerous mistakes at the public counter, failing to sign and submit his timecard in a timely fashion and leaving the office without properly "closing" the counter.  King acknowledges that when he was dismissed, Torres showed him two calculation errors he had made at the counter.  This evidence, if believed by a jury, could reasonably support a judgment in the County's favor.  We conclude that the County satisfied its burden of articulating a legitimate, non-retaliatory reason for King's dismissal.

### 4. *No Triable Issue as to Intentional Retaliation*

After the County met its burden, the presumption of retaliation "simply drops out of the picture" and the burden shifts back to King to demonstrate a triable issue of material fact that the County's proffered justification was mere pretext.  (*St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 510-511; *McRae, supra*, 142 Cal.App.4th at pp. 388-389.)  King cannot satisfy this burden simply by submitting evidence that the County's decision was wrong or unwise.  He must demonstrate that its proffered reasons were so inherently implausible that a reasonable factfinder could rationally find them unworthy of credence, and infer that the County did not act for the stated legitimate reasons.  (*McRae*, at pp. 388-389.)  Because King has no direct evidence of a retaliatory reason for his termination, he must introduce "specific" and "substantial" circumstantial evidence raising a triable issue of material fact that the County was more likely than not motivated by a discriminatory reason.  (*Morgan, supra*, 88 Cal.App.4th at pp. 68-69.)  King has not met this burden.

11

First, King contends that a triable issue exists regarding whether Torres or the fire marshal was the decisionmaker in dismissing him from probation. Although the fire marshal's involvement in his dismissal was relevant to assess whether King had established a prima facie case, it did not by itself create a triable issue as to whether the County, having presented legitimate reasons for the dismissal, acted with retaliatory intent. King has no evidence that the fire marshal did anything more than "rubber stamp" Torres's recommendation to dismiss King from probation. Without any additional evidence, a jury would have to speculate that the fire marshal approved Torres's recommendation, not because of the reasons given by Torres, but because she had a retaliatory motive due to her knowledge of the complaints about Greer. A plaintiff's "'suspicions of improper motives . . . primarily based on conjecture and speculation' are not sufficient to raise a triable issue of fact to withstand summary judgment." (*Kerr v. Rose* (1990) 216 Cal.App.3d 1551, 1563-1564.)

Next, King asserts that a triable issue exists regarding whether Torres was aware of the complaints about Greer when he recommended King's dismissal. Torres adamantly denies having any knowledge of the complaints or the investigation until King filed this lawsuit. King testified that, to his knowledge, no one at the Department ever said or wrote anything indicating that the complaints were the reason for his dismissal. King further admitted that he has no specific information that Torres ever knew about the complaints. His theory is that Torres must have known because at least one other employee, Inspector Martinez, told Coffey that he had heard that she and King had "told on" Greer. The County maintains that this statement is inadmissible hearsay, but even if it is admissible, it does not create a triable issue that Greer also heard about the complaints and then retaliated based on such gossip. "[M]ere workplace gossip is not a substitute for proof." (*Beyda v. City of Los Angeles* (1998) 65 Cal.App.4th 511, 521.)

Finally, King devotes much of his brief to explaining why all the reasons given for his rejection from probation were illogical, weak or lacked merit, and why he was "on track" to satisfactorily complete his probation. He is correct that evidence showing that the employer's claimed reason for dismissal is false may "suggest that the

employer seeks to conceal the real reason for its actions, and this in turn may support an inference that the real reason was unlawful." (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 715.) In *Mamou*, for example, the court determined that the evidence supported such an inference because the employer "never rested on a single coherent explanation for its firing of [the plaintiff], and that several if not all of its explanations were, to put it mildly, questionable." (*Id.* at p. 716.) That is not the case here.

During his 2008 probationary performance review, King acknowledged that he needed to improve in certain areas. At his deposition, he admitted certain deficiencies in his performance, including making "[a]n occasional mistake at the counter" and miscalculating fees on three or four occasions. King also admitted that, except for creating an organizational chart, he was not assigned tasks above his ability level. He claims that certain criticisms of his performance were mistaken or unfair, but a "plaintiff's subjective beliefs in an employment . . . case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433; *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 816 ["[A]n employee's subjective personal judgments of his or her competence alone do not raise a genuine issue of material fact"].) The plaintiff's evidence must relate to the *motivation* of the decisionmakers to establish, by nonspeculative evidence, an actual causal link between the prohibited activity and dismissal. (*Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 774.)

There is no question that the Department's decision to assign King to a training officer who was causing "problems" and who was unhappy with the assignment placed him in a difficult situation. That the Department could have done more to prevent the misconduct in the first place does not mean that it retaliated against King once the complaints were made. The record reflects that the County investigated the complaints and, as a result, transferred him to a new supervisor. King has no evidence that anyone in the Department thought Greer's behavior was appropriate and should not have been

13

reported. To the contrary, even Greer admits that King and Coffey were placed in a "hostile work environment."

King did introduce evidence that Greer thought King was performing satisfactorily before the transfer, and that coworker Enneking believed King's performance at the counter was satisfactory notwithstanding some mistakes. King further claimed that after the investigation, he received the "cold shoulder" from other coworkers and did not receive appropriate training from Torres. This evidence does not, however, refute the uncontroverted evidence that King displayed performance deficiencies while working under Torres's supervision. It also does not demonstrate a causal link between the complaints and King's dismissal. At best, it shows that Torres and Greer had different training styles and that Torres was more critical of King's performance issues than Enneking. The trial court properly concluded that the lack of any nonspeculative evidence linking the complaints to the dismissal defeats King's retaliation claim.

*Second Cause of Action for Wrongful Termination*

King's second cause of action alleges that he was wrongfully terminated in violation of the public policy embodied in FEHA. The County correctly observes that section 815, subdivision (a) abolishes common law tort liability for public entities, including tort liability for wrongful termination in violation of public policy. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 899-900.) *Miklosy* affirmed a judgment of dismissal after the sustaining of a demurrer, stating that the defendant public entity could not be liable for wrongful termination in violation of a public policy based on retaliation. (*Id.* at pp. 899-900, 903.) Notwithstanding this immunity, however, King's failure to establish a triable issue of material fact regarding his retaliation claim under FEHA similarly defeats his wrongful termination claim.

*Third Cause of Action for Breach of Contract*

King's third cause of action alleges that his probationary employment contract with the County provided that he would not be terminated for reasons which violate public policy. In addition to the previously discussed retaliation allegations, King asserts the County violated section 19173, subdivision (b), which states an employee

14

dismissed or rejected from probation must be given a written "statement of the reasons for the rejection." As the County points out, section 19173 does not create a private right of action or any civil remedy in damages for its violation. (See *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300 ["The fact that neither the Legislative Analyst nor the Legislative Counsel observed that the new act created a private right of action is a strong indication the Legislature never intended to create such a right of action"].)

King further contends that the County did not follow certain procedural requirements set forth in the County personnel rules and the union contract. Once again, King has not shown that such procedural violations, even if true, create a private right of action. Typically, such procedural and due process issues must be raised in an administrative writ proceeding. (Code Civ. Proc., § 1094.5; see *Mola Development Corp. v. City of Seal Beach* (1997) 57 Cal.App.4th 405, 411 ["Mandamus proceedings allow courts to flesh out the issues and factual components of the dispute, including issues of procedural fairness"]; *Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1729-1730 [administrative mandamus review under section 1094.5 extends to the question of whether there was a "fair administrative hearing"].) In the absence of any triable issues of material fact, the trial court appropriately granted the County's motion for summary judgment.

DISPOSITION

The judgment is affirmed. The County shall recover its costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.


15

Rebecca S. Riley, Judge

Superior Court County of Ventura

_____



Law Office of Allen Broslovsky, Allen Broslovsky for Plaintiff and Appellant.

Wisotsky, Procter & Shyer, Alan E. Wisotsky, Jeffrey Held for Defendant and Respondent.