[No. B159471. Second Dist., Div. Seven. Feb. 19, 2004.]

LAURA M. MATHIEU, Plaintiff and Appellant, v.
NORRELL CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Knickerbocker Law Corporation and Richard L. Knickerbocker for Plaintiff and Appellant.

Littler Mendelson, J. Kevin Lilly, Martha J. Keon and Traci I. Beach for Defendant and Respondent Spherion Pacific Enterprises.

OPINION

**PERLUSS, P. J.**—Norrell Corporation, a temporary employment agency,[1] placed Laura M. Mathieu with its client Gulfstream Aerospace Corporation. Mathieu's former boyfriend, Richard Fluck, was also employed by Gulfstream. Once Mathieu began working at Gulfstream, Fluck taunted and harassed her and made it difficult for Mathieu to complete assignments.

After Mathieu's position at Gulfstream was terminated, she brought suit against Fluck, Gulfstream and Norrell for sexual harassment and sexual discrimination in violation of the Fair Employment and Housing Act, Government Code section 12900 et seq. (FEHA),[2] and against Gulfstream and Norrell for unlawful retaliation, common law wrongful termination and breach of the covenant of good faith and fair dealing. Following Mathieu's settlement of her claims against Gulfstream and Fluck, the trial court granted summary judgment in favor of Norrell. Because triable issues of fact exist with respect to Mathieu's retaliation claim, we reverse the judgment. However, we conclude summary adjudication of her claims against Norrell for sexual harassment, sexual discrimination, wrongful termination and punitive damages was properly granted.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Mathieu's Employment with Norrell*

Norrell places employees in temporary and long-term assignments at its clients' work sites. Gulfstream, like Norrell's other clients, retained the sole authority to hire and fire employees placed with it by Norrell, and also set the salary and determined raises to be given those employees.

Mathieu contacted Norrell and began accepting temporary employment through its Carson office in July 1998. As part of the hiring process she read and signed an application that provided her employment was at will. Her contact at Norrell was Susan Dunn, a customer service manager whose duties included interviewing employees and placing them with Norrell clients.

### 2. *Mathieu's Placement at Gulfstream and Her Problems with Richard Fluck*

Dunn offered Mathieu a position at Gulfstream in August 1998. Mathieu accepted the placement even though she was aware that Fluck, a former lover

---

[1] Norrell Corporation is no longer in existence. Its successor in interest is respondent Spherion Pacific Enterprises, LLC. For purposes of clarity, we refer to respondent as "Norrell."

[2] All statutory references are to the Government Code unless otherwise indicated.

with whom she had parted on very bad terms, was also employed by Gulfstream. Although Fluck did not work in the same department as Mathieu, the two crossed paths from time to time. According to Mathieu, Fluck began a campaign of harassment against her; including glaring, shouting and sneering at her, failing to return work-related emails and paperwork, purposefully bumping into her in the hallway, calling her names and ostentatiously turning his back when he saw her. Mathieu complained about this treatment both to her supervisor at Gulfstream and to Gulfstream's human resources department. The only action taken was to tell Fluck and Mathieu to stay away from one another.

Although Mathieu was required to report any problems at the Gulfstream workplace to Norrell, she waited six months, until February 12, 1999, to tell Dunn about her difficulties with Fluck. At that time Mathieu told Dunn by telephone that she had been having problems with her former boyfriend, who was being rude and "slandering her to others." Dunn documented the telephone call in Mathieu's computerized personnel file.

On February 15, 1999, Dunn contacted Gulfstream human resources representative Jody Cornelius to inquire about the situation between Mathieu and Fluck. Cornelius told Dunn that Fluck had been advised to stop his improper behavior and that Mathieu had not complained since the warning. Dunn contacted Mathieu the next day and told her that Fluck had been admonished to stop his rude behavior. Dunn asked Mathieu to let her know immediately if any further problems arose. Mathieu told Dunn there had been no further problems and things had calmed down. Dunn contacted Mathieu again on March 3, 1999, to inquire about the situation with Fluck. Mathieu repeated that everything had calmed down. After February 12, 1999, Mathieu did not complain to anyone about Fluck's behavior.

### 3. *Mathieu's Release from Gulfstream*

On March 8, 1999, Gulfstream human resources representative Rhonda London informed Dunn that Mathieu was being released from her assignment as a cost-containment measure. During a visit to Norrell's office the same day, Mathieu told Dunn she believed she was being released because of her complaints about Fluck. Dunn responded that Gulfstream had explained the layoff was due to budget cuts and assured Mathieu that Norrell would look for another position for her. Dunn contacted London and relayed Mathieu's concern that she had been terminated because of the situation with Fluck. London reiterated that Mathieu's layoff was economic and told Dunn that, although she had no personal knowledge of the situation with Fluck, she had not heard anything to indicate that situation was related to Mathieu's job loss.

Dunn offered Mathieu a new short-term position shortly after the layoff. Mathieu, however, opted to take a position with a different temporary agency. Mathieu never worked for Norrell again.

### 4. *The Lawsuit and Norrell's Motion for Summary Judgment*

After obtaining a right-to-sue letter from the Department of Fair Employment and Housing (DFEH), Mathieu filed suit against Fluck, Gulfstream and Norrell on March 22, 2001. The complaint alleged causes of action for sexual harassment and sexual discrimination against Fluck and the corporate defendants and for retaliation, wrongful termination in violation of public policy and breach of the covenant of good faith and fair dealing against Gulfstream and Norrell.

Norrell moved for summary judgment on February 11, 2002.[3] After two hearings and two detailed written tentative rulings,[4] the trial court granted summary judgment based on its determination there were no material issues of fact in dispute as to four of the eight issues raised in the motion and summary judgment/summary adjudication was therefore proper as to those issues:

Noticed Issue 5: "All of Plaintiff's claims fail to present a triable issue of material fact because Defendant did not know or should have known that the client's decision was discriminatory and because Defendant took the appropriate corrective measures within its control."

Noticed Issue 6: "The third cause of action for wrongful termination fails to present a triable issue of material fact because it is barred by the statute of limitations and/or because Plaintiff cannot establish a violation of any statute."

Noticed Issue 7: "The fourth cause of action for breach of the covenant of good faith and fair dealing fails to present a triable issue of material fact because Plaintiff has not pled an enforceable contract and/or because Plaintiff cannot rebut the presumption of at-will employment."[5]

---

[3] By the time Norrell filed its motion, Gulfstream and Fluck were no longer parties to the lawsuit. Norrell's brief on appeal states, and Mathieu does not dispute, that Mathieu settled with those parties.

[4] The court prepared an initial tentative ruling prior to oral argument on March 12, 2002. Following oral argument, the court supplemented its original tentative ruling on issues 5, 6, 7 and 8, and left its prior ruling standing as to the other issues. Following further argument on March 29, 2002, the court adopted its tentative decision as its ruling on Norrell's motion and directed counsel to submit a proposed form of judgment.

[5] Mathieu has not appealed from the trial court's ruling on noticed issue 7, and we affirm summary adjudication as to that issue.

Noticed Issue 8: "Plaintiff's claims for punitive damages fail to present a triable issue of material fact because her supervisor was not an officer, director or managing agent of Defendant and/or because her supervisor did not act with the requisite malice or oppression."

Judgment was entered in favor of Norrell on April 12, 2002.

## DISCUSSION

(1) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296]; Code Civ. Proc., § 437c, subd. (c).)

### 1. *The Trial Court Erred in Granting Summary Judgment Based on Norrell's Noticed Issue 5*

The trial court correctly concluded Norrell responded appropriately to Mathieu's initial claims of sexual harassment. However, the court erred in finding no triable issues of fact as to her claim for retaliation.

#### a. *Both Norrell and Gulfstream May Be Considered Mathieu's Employer for Purposes of Potential Liability for Sexual Harassment and Retaliation*

The nature and extent of Norrell's responsibility to protect its employee Mathieu from sexual harassment by Gulfstream employees may depend on whether Gulfstream is viewed simply as Norrell's client or, in addition, is considered to be Mathieu's "special employer." An employer's liability under FEHA for hostile environment sexual harassment committed by customers or clients prior to the effective date of the 2003 amendment to section 12940, subdivision (j) (Stats. 2003, ch. 671, § 1) is uncertain.[6] However, if

---

[6] The 2003 amendment to section 12940, subdivision (j), provides that prohibited harassment includes conduct by nonemployees if the employer knows or should have known of the incident and fails to take corrective action. (Stats. 2003, ch. 671, § 1.) Prior to this amendment, the Court of Appeal decisions were in conflict. (Compare *Salazar v. Diversified Paratransit, Inc.,* review granted Jan. 22, 2003, S111876 with *Carter v. California Dept. of Veterans Affairs,* review granted Aug. 13, 2003, S117253.) The Legislature declared that, in adopting this amendment, it intended "to construe and clarify the meaning and effect of existing law and to reject the interpretation given to the law in *Salazar v. Diversified Paratransit, Inc.* (2002) 103 Cal.App.4th 131 [126 Cal.Rptr.2d 475]." (Stats. 2003, ch. 671, § 2; see *Eu v. Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289] [subsequent legislative interpretation of existing law, although not binding, is properly considered as a factor in determining correct meaning and effect of the statute].) After this enactment, the Supreme Court transferred the two

sexual harassment is perpetrated by a coworker, an employer is liable if it fails to take immediate and appropriate corrective action when reasonably made aware of the conduct. (§ 12940, subd. (j)(1); *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1136–1137 [90 Cal.Rptr.2d 804, 988 P.2d 1083].)[7]

 In the context of an individual who is employed by a temporary agency and assigned to work on the premises of the agency's client, we believe the purpose of FEHA to safeguard an employee's right to hold employment without experiencing discrimination is best served by applying the traditional labor law doctrine of "dual employers," holding both the agency and the client are employers and considering harassment by an employee of the client coworker harassment rather than harassment by a third party. (*Kowalski v. Shell Oil Co.* (1979) 23 Cal.3d 168, 174 [151 Cal.Rptr. 671, 588 P.2d 811] ["The possibility of dual employment is well recognized in the case law. 'Where an employer sends an employee to do work for another person, and both have the right to exercise certain powers of control over the employee, that employee may be held to have two employers—his original or "general" employer and a second, the "special" employer.' [Citation.]"]; *Riley v. Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242, 1247–1248 [250 Cal.Rptr. 718] (*Riley*) ["when an employer lends an employee to another employer and relinquishes to the borrowing employer all right of control over the employee's activities" a two-employer situation is created].)

In *Riley, supra,* 203 Cal.App.3d 1242, the plaintiff was retained by Manpower, Inc., a "labor broker," which sent Riley to work at Southwest Marine as a general laborer. Southwest Marine provided all the training, equipment and supervision. Manpower, like Norrell in this case, "dealt only with payroll matters, issuing Riley a check on submission of time cards and taking care of withholding social security, federal and state taxes, and paying premiums for unemployment insurance, workers' compensation and [other] insurance." (*Id.* at p. 1246.) Riley was injured on the job. He filed a workers' compensation claim and later brought a tort suit against Southwest Marine, contending "he was not a Southwest Marine employee and therefore was not limited to a remedy in the nature of workers' compensation." (*Id.* at p. 1247.) The trial court granted summary judgment in favor of Southwest Marine; the Court of Appeal affirmed, holding that, although the existence of a dual employment relationship is generally a question of fact, the undisputed evidence in *Riley* established such a relationship as a matter of law because

cases back to Division Three of this court and Division Two of the Fourth District Court of Appeal, respectively, "for reconsideration in light of Chapter 671 of the Statutes of 2003."

[7] The employer is strictly liable for sexual harassment by an agent or supervisor. (§ 12940, subd. (j)(1); *Carrisales v. Department of Corrections, supra,* 21 Cal.4th at p. 1136.)

Riley was under Southwest Marine's direct supervision and control at the time of his injury. (*Id.* at p. 1252.)

■ In the present case, as in *Riley, supra,* 203 Cal.App.3d 1242, both the employment agency and the client company had the right to exercise certain powers of control over the employee. It is undisputed that Mathieu was paid by Norrell and that she was required to report to Norrell if, for example, she were to miss a day of work. Accordingly, like the labor broker in *Riley,* Norrell is properly considered Mathieu's "general" employer and Gulfstream her "special" employer.

"If general and special employment exist, 'the injured [worker] can look to both employers for [workers'] compensation benefits. [Citations.]' " (*Kowalski v. Shell Oil Co., supra,* 23 Cal.3d at p. 175.) We see no reason not to permit an employee injured by violations of FEHA laws to likewise look to both employers for redress. Applying this doctrine promotes the purpose of FEHA, which is to prevent and eliminate sexual harassment and discrimination in the workplace. (See *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 493 [59 Cal.Rptr.2d 20, 926 P.2d 1114] ["The FEHA itself requires that we interpret its terms liberally to accomplish the stated legislative purpose"]; *Fisher v. San Pedro Peninsula Hospital* (1998) 214 Cal.App.3d 590, 624 [262 Cal.Rptr. 842] [provisions of FEHA are to be construed liberally to achieve its purpose of preventing and eliminating sexual harassment in the workplace].) To hold otherwise would allow Norrell and other temporary employment agencies to send their employees into hostile and discriminatory workplaces and to ignore complaints of harassment without fear of liability. By contrast, the purposes of FEHA are promoted if both the staffing agency and its client are treated as the employer, and employees of the client entity are treated as coworkers of employees of the staffing agency, within the meaning of FEHA. (*Carrisales v. Department of Corrections, supra,* 21 Cal.4th at p. 1140.)

> b. *The Undisputed Facts Establish Norrell Was Not Aware of the Alleged Harassment Until It Had Ceased*

■ An employer is not liable for nonsupervisor, coworker harassment if it takes prompt, reasonable and efficacious remedial action. (§ 12940, subd. (j)(1) [harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action]; *Carrisales v. Department of*

*Corrections, supra,* 21 Cal.4th at p. 1135; *Ellison v. Brady* (9th Cir. 1991) 924 F.2d 872, 882 [employer not liable if it takes remedial actions "reasonably calculated to end the harassment"].)[8]

It is undisputed that Mathieu did not complain to Norrell about her alleged harassment by Fluck for six months. It is also undisputed that, after Dunn investigated the complaint and contacted Mathieu to report the results of that investigation, Mathieu told Dunn that things had "calmed down" and made no further complaints to anyone. Dunn was also told by Gulfstream that the situation had been resolved. Under those circumstances, the trial court correctly concluded, based on the undisputed facts, that Norrell acted reasonably with respect to Mathieu's initial complaint of sexual harassment. (See, e.g., *Swenson v. Potter* (9th Cir. 2001) 271 F.3d 1184, 1193 ["The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified. An investigation is a key step in the employer's response."]; *id.* at p. 1196 ["a good faith investigation of alleged harassment may satisfy the 'prompt and adequate' response standard, even if the investigation turns up no evidence of harassment"].)

 c. *Triable Issues of Fact Exist as to Mathieu's Claim for Unlawful Retaliation*

■ Even though Norrell established it took appropriate corrective measures in response to Mathieu's initial (and belated) complaint of hostile work environment sexual harassment, that finding does not exonerate Norrell from potential liability with respect to Mathieu's claim Norrell retaliated against her because of her complaints about Fluck in violation of section 12940, subdivision (h).[9] To establish a prima facie case of retaliation, a plaintiff must show she engaged in a protected activity, she was thereafter subjected to adverse employment action by her employer and there was a causal link between the two. (*Soldinger v. Northwest Airlines, Inc.* (1996) 51 Cal.App.4th 345, 367 [58 Cal.Rptr.2d 747]; *Fisher v. San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d at p. 614.) Disputed issues of fact preclude summary adjudication on this claim.

After she was terminated by Gulfstream, Mathieu informed Dunn she believed Gulfstream's decision had been motivated by her earlier complaints

---

[8] Federal cases interpreting title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) are persuasive authority for interpreting FEHA. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

[9] Section 12940, subdivision (h), makes it unlawful "[f]or any employer, labor organization, employment agency, or person to discharge, expel or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a compliant, testified, or assisted in any proceeding under this part."

about Fluck. Dunn spoke with London at Gulfstream, who told her "she had not been involved in the situation with Plaintiff's ex-boyfriend . . . it was never mentioned in the context of the decision to release Plaintiff from her assignment." Despite the fact that London admittedly had no firsthand knowledge as to "the situation with [Mathieu's] ex-boyfriend," and despite the fact that other Gulfstream employees had told Mathieu they believed she was terminated because of her problems with Fluck, Dunn did not pursue the matter further, nor did she exercise her prerogative to recommend that Gulfstream retain Mathieu.

After the assignment with Gulfstream ended, Norrell continued to contact Mathieu about potential placements for a short time. However, it is disputed whether Norrell agreed to reassign her to a comparable position. Mathieu testified she received only two or three more telephone calls from Norrell after her termination from Gulfstream and was not given the opportunity to work in a position similar to the one she had at Gulfstream. As the trial court concluded in denying summary adjudication as to noticed issue 4,[10] this evidence creates triable issues as to whether Norrell engaged in retaliation of its own by failing to attempt to place Mathieu in a comparable position elsewhere after her discharge by Gulfstream. (See *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1455 [116 Cal.Rptr.2d 602] ["We agree with those federal courts that have held an adverse employment action is not limited to 'ultimate' employment acts, such as a specific hiring, firing, demotion, or failure to promote decision. The legislative purpose underlying FEHA's prohibition against retaliation is to prevent employers from deterring employees from asserting good faith discrimination complaints, and the use of intermediate retaliatory actions may certainly have this effect. But we also agree with the *Thomas* [*v.* Department of Corrections (2000) 77 Cal.App.4th 507 [91 Cal.Rptr.2d 770] court's observation that to be actionable, the retaliation must result in a substantial adverse change in the terms and conditions of the plaintiff's employment. . . . While the Legislature was understandably concerned with the chilling effect of employer retaliatory actions and mandated that FEHA provisions be interpreted broadly to prevent unlawful discrimination, it could not have intended to provide employees a

---

[10] The trial court ruled, "Issue Number 4: Defendant contends that plaintiff has not established an adverse employment action by defendant because plaintiff herself testified that she was offered another position. However, Defendant itself acknowledges that Plaintiff was released from her assignment (albeit for budgetary reasons). [Citation.] Further, plaintiff presents evidence that the position was a 'short-term, low paying position.' [Citation.] Thus, summary adjudication of the issue of plaintiff's failure to establish an adverse employment action is denied." The trial court also denied summary adjudication as to issue 2, in which Norrell asserted Mathieu's "cause of action for retaliation fails to present a triable issue of material fact because [Mathieu] did not engage in protected activity under the act and because [Mathieu] did not have an objective belief that she was subject to sexual harassment."

remedy for any possible slight resulting from the filing of a discrimination complaint."].)

Norrell contends it cannot be liable for retaliation because Mathieu never "indicated that she believed Fluck's behavior to be sexual harassment." However, Mathieu presented evidence she told Dunn "everything" about Fluck's conduct and that "such treatment, being directed to her as a women, constitutes sexual harassment." The undisputed facts establish Mathieu complained of the following behavior: (1) Fluck glaring at her; (2) Fluck failing to return Mathieu's emails, which were essential to the completion of her job duties; (3) Fluck shouting at her and hindering the performance of her duties when she inquired about work-related matters; (4) Fluck turning his back on her when he saw her; (5) Fluck sneering at her; (6) Fluck bumping his shoulder into her in the halls or whispering into someone's ear when she was near; (7) Fluck shouting at her that he was busy, "get away" and "what the hell do I have to sign that for?" when she approached him; (8) Fluck failing to return paperwork that was essential for Mathieu to complete her job duties; (9) Fluck yelling at her "psycho," "bitch" and "get out"; and (10) Fluck shouting "let's walk past the stick," calling her "Ally McBeal" and commenting that he did not understand how he could ever have been attracted to her. To be sure, all but the last one or two items on Mathieu's list of complaints bear a stronger resemblance to junior high school-style expressions of personal animus than to harassment on the basis of sex.[11] However, resolving all conflicting inferences in favor of Mathieu, as we must (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839 [89 Cal.Rptr.2d 540]), we conclude a triable issue of fact exists as to whether Norrell reasonably understood Mathieu's complaints to raise an issue of sexual harassment and thus constituted "protected activity" within the meaning of FEHA. (See also *Katz v. Chevron Corp.* (1994) 22 Cal.App.4th 1352, 1365 [27 Cal.Rptr.2d 681] ["doubts as to the propriety of granting the motion should be resolved in favor of the opposing party"].)

---

[11] Referring to a female coworker as a "bitch," while clearly derogatory, may or may not be indicative of sex-based hostility. Given Fluck's other comments, however, a jury could interpret his use of the term as one piece of evidence suggesting hostile work environment sexual harassment. (See, e.g., *Costa v. Desert Palace, Inc.* (9th Cir. 2002) 299 F.3d 838, 861–862 (en banc), affd. *sub nom. Desert Palace v. Costa* (2003) 539 U.S. 90 [123 S.Ct. 2148, 156 L.Ed.2d 84] ["Whether this term [bitch] is part of the everyday give-and-take of a warehouse environment or is inherently offensive is not for us to say. Instead, we simply conclude that the jury could interpret it here to be one piece of evidence among many, a derogatory term indicating sex-based hostility."]; *Bailey v. Henderson* (D.D.C. 2000) 94 F.Supp.2d 68, 75 [" 'Bitch,' which means 'a female canine' or 'a malicious, spiteful and domineering woman' [fn. omitted] clearly and objectively has gender-specific connotations. It breaks no new legal ground to state—as the Seventh Circuit acknowledges—that the use of the word 'bitch' can create a hostile work environment; whether it does or not depends on the particular circumstances of the case."].)

■ In sum, a finder of fact could reasonably conclude Mathieu engaged in protected activity (complaining to her supervisor and to Gulfstream's human resources department about hostile work environment sexual harassment by Fluck) and was thereafter subjected to adverse employment action not only by Gulfstream but also by Norrell. Mathieu's additional evidence that Dunn failed adequately to investigate or attempt to correct the alleged retaliation by Gulfstream is certainly sufficient at this stage to raise an inference of a causal connection between her protected activity and the adverse employment action. (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203 [48 Cal.Rptr.2d 448] [employer's burden on summary judgment directed to claim of retaliation to present admissible evidence either that one or more of plaintiff's prima facie elements is lacking or that the adverse employment action was based on legitimate, nondiscriminatory factors]; see also *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 669 [8 Cal.Rptr.2d 151] [discussing nature of evidence required to raise inference that discrimination infected ultimate employment decision].)

 d. *Mathieu's Claims for Harassment and Retaliation Constitute Separate "Causes of Action" Pursuant to Code of Civil Procedure Section 437c, Subdivision (f)(1)*

■ Both FEHA causes of action in Mathieu's complaint assert two grounds for liability: the initial hostile environment sexual harassment by Fluck and retaliation for complaining about the harassment.[12] Those two separate and distinct grounds for liability constitute separate cause of action for purposes of Code of Civil Procedure section 437c, subdivision (f)(1).[13] (*Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1854–1855 [16 Cal.Rptr.2d 458] ["under subdivision (f) of section 437c, a party may present a motion for summary adjudication challenging a separate and distinct wrongful act even though combined with other wrongful acts alleged in the same cause of action"]; see also *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 816–819 [111 Cal.Rptr.2d 87, 29 P.3d 175] [declining to follow *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341 [21 Cal.Rptr.2d 292] and *Watson v. Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1290–1291 [261 Cal.Rptr. 204], which had held harassment followed by retaliation constituted a single continuing violation of FEHA].) Because

---

[12] The complaint alleges, with respect to both FEHA causes of action, that "Defendants, and each of them, sexually harassed Plaintiff and discriminated against her by reason of her sex by making crude sexual remarks towards Plaintiff, by making sexual propositions, and retaliating against Plaintiff upon her complaints of the sexual harassment."

[13] Code of Civil Procedure section 437c, subdivision (f)(1), provides, "A party may move for summary adjudication as to one or more causes of action within an action . . . if that party contends the cause of action has no merit . . . . A motion for summary adjudication shall be granted only if it completely disposes of a cause of action . . . ."

we find triable issues of fact with respect to retaliation, but not with respect to the initial harassment, on remand the trial court should enter an order summarily adjudicating Mathieu's claims for sexual harassment and proceed with Mathieu's claim of retaliation.

### 2. *The Trial Court Properly Granted Summary Adjudication as to Mathieu's Common Law Claim for Wrongful Termination*

The third cause of action in Mathieu's complaint purports to state a common law claim for wrongful termination in violation of public policy. Mathieu does not dispute that she filed her complaint more than one year after her assignment at Gulfstream was terminated, which was beyond the applicable one-year statute of limitations. (Former Code Civ. Proc., § 340, subd. (3).)[14] She argues, however, that the limitations period was tolled while she was pursuing her administrative claim with DFEH.

Mathieu's tolling argument is not supported by any reported California case and is inconsistent with Supreme Court decisions holding that a common law cause of action for discharge in violation of public policy is, in effect, an independent alternative to a FEHA administrative claim and subsequent cause of action under the act. (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 86 [276 Cal.Rptr. 130, 801 P.2d 373] [although an employee must exhaust the administrative remedy made available by the FEHA before bringing a cause of action under the FEHA, exhaustion is not required before filing a civil action for damages alleging nonstatutory tort of wrongful discharge in violation of public policy against sex discrimination and sexual harassment in employment]; *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 905 [66 Cal.Rptr.2d 888, 941 P.2d 1157] [applying *Rojo* to claim of wrongful discharge in violation of public policy against age discrimination].) "An employee, of course, may elect to waive the statutory cause of action and remedies, and proceed directly to court on the common law claims [citation]; alternatively, the employee may pursue both the administrative and the judicial avenues, either sequentially [citations] or simultaneously, in the latter case amending his or her complaint to join the FEHA cause of action once the Department has issued the right-to-sue letter [citation]." (*Rojo*, at p. 88.) As the court explained in *Rojo*, the putative plaintiff is not in any way disadvantaged by having to file his or her nonstatutory claims before receiving a right-to-sue letter from the DFEH and, therefore, there is no basis for recognizing equitable tolling in this situation. (Accord, *Burmeister v. Automatic Data Processing, Inc.* (N.D. Cal. Mar. 1, 1999, No. C 99-00081CRB) 1999 U.S. Dist. LEXIS 2230 [1999 WL 11890, p. 2].)

---

[14] Effective January 1, 2003, the statute of limitations was changed to two years. (Code Civ. Proc., § 335.1.)

Mathieu relies on *Downs v. Department of Water & Power* (1997) 58 Cal.App.4th 1093, 1100 [68 Cal.Rptr.2d 590], in which the Court of Appeal held that a plaintiff who had filed a statutory FEHA claim more than one year after receiving a right-to-sue letter from the DFEH, but within 90 days of receiving a right-to-sue letter from the federal Equal Employment Opportunity Commission (EEOC), was entitled to equitable tolling of the FEHA one-year limitations period. The basis for this ruling, however, is that "when a charge of discrimination is timely filed concurrently with the EEOC and the Department of Fair Employment and Housing ('DFEH'), the DFEH defers investigation of the complaint to the EEOC. [Therefore] the limitations period to bring an FEHA action would be tolled until the plaintiff receives a right-to-sue letter from the EEOC." (*Burmeister v. Automatic Data Processing, Inc., supra,* 1999 U.S. Dist. LEXIS 2230 at p. 2.) Recognizing equitable tolling in the context of concurrent state and federal administrative proceedings preceding a statutory claim under the FEHA, however, is far different from permitting a plaintiff to delay filing a common law tort action because an alternative administrative process has not yet been completed. We decline to extend the ruling of *Downs* to the current situation, as to which its rationale is simply inapplicable. Summary adjudication was properly granted as to Mathieu's wrongful termination claim.

3. *The Trial Court Properly Granted Summary Adjudication as to Mathieu's Claim for Punitive Damages*

Pursuant to Civil Code section 3294, subdivision (a), punitive damages may be awarded if the plaintiff proves by clear and convincing evidence that the defendant is guilty of fraud, oppression or malice. Under Civil Code section 3294, subdivision (b), an employer is not liable for punitive damages for the acts of one of its employees unless the employer had advance notice of the unfitness of the employee and employed him or her with conscious disregard for the rights or safety of others, or authorized or ratified the wrongful conduct. In either case, punitive damages are not available unless the evidence to support such damages is " ' "so clear as to leave no substantial doubt"; "sufficiently strong to command the unhesitating assent of every reasonable mind." ' " (*Mock v. Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 332–333 [5 Cal.Rptr.2d 594].)

At the hearing on Norrell's motion for summary judgment, Mathieu's counsel conceded that Dunn's conduct did not rise to the level of oppression, fraud or malice. He argued instead that Norrell's corporate failure to maintain and enforce a policy against sexual harassment was so wrongful as to give rise to punitive damages. The trial court rejected that argument, stating it "declines to create new punitive damages liability without legislative history or case authority justifying such an expansion in the law." The trial court

additionally observed the evidence does not support Mathieu's assertion that Norrell did not have a policy against sexual harassment.

We agree with the trial court. No evidence suggests that Dunn, even if she were an officer, director or managing agent of Norrell, engaged in "[c]onduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard for the rights or safety of others" (Civ. Code, § 3294, subd. (c)(1) [defining "malice"]), "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights" (Civ. Code, § 3294, subd. (c)(2) [defining "oppression"]) or "conduct which is so vile, base, contemptible, miserable, wretched, or loathsome that it would be looked down upon and despised by ordinary decent people." (BAJI No. 14.71.)

Moreover, even if we were to accept Mathieu's legally unsupported contention that an employer's failure to have a policy against sexual harassment could constitute oppression, fraud or malice, we agree with the trial court's finding that Mathieu presented no evidence, let alone clear and convincing evidence, that Norrell (as opposed to Gulfstream) did not have a sexual harassment policy or that it refused to provide her with a copy of its policy.

## DISPOSITION

The judgment is reversed. On remand, the trial court shall (1) enter an order of summary adjudication as to Mathieu's claims for hostile work environment sexual harassment; (2) enter an order of summary adjudication as to Mathieu's third cause of action for wrongful termination; (3) enter an order of summary adjudication as Mathieu's claim for punitive damages; (4) enter an order of summary adjudication as to Mathieu's claim for breach of the covenant of good faith and fair dealing; and (5) conduct further proceedings not inconsistent with this opinion. Each party is to bear her or its own costs on appeal.

Woods, J., and Zelon, J., concurred.