Filed 7/10/24  Yeoh v. Los Angeles County Office of Education CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARK YEOH, | B324075 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV43132) |
| v. | |
| LOS ANGELES COUNTY OFFICE OF EDUCATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce Iwasaki, Judge.  Affirmed.

Law Office of David J. Duchrow and David J. Duchrow for Plaintiff and Appellant.

White & Reed and Michael R. White for Defendant and Respondent.

Mark Yeoh (appellant) appeals from a judgment entered after the trial court sustained a demurrer without leave to amend to all causes of action alleged in appellant's complaint against respondent Los Angeles County Office of Education (LACOE). The thrust of appellant's complaint was he suffered retaliation after engaging in alleged protected activity in 2013. The trial court found appellant failed to allege a pattern of continuing violations, thus his causes of action were barred by the applicable statutes of limitations. The court further found appellant lacked the standing to sue certain of his statutory claims. Appellant claims the trial court erred in sustaining the demurrer and declining to allow him leave to amend to add a new cause of action. Finding no error, we affirm.

## FACTUAL BACKGROUND[1]
### LACOE and Special Education Local Plan Area (SELPA)

LACOE is the nation's largest regional education agency. It provides a range of programs and services to support Los Angeles County's 80 school districts and their students.

Beginning in 1977, all California school districts and offices (including LACOE) were required to form geographical regions of sufficient size and scope to provide special education services for children living within the region's boundaries. Each geographic region was designated a SELPA. Each SELPA developed a local plan describing how it would provide special education services to students who were disabled or had special needs. LACOE

---

[1]     All facts are unproven allegations. However, for the purposes of this appeal, we assume the truth of appellant's allegations. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)

administered and oversaw several SELPA's including one known as the southwest SELPA.

From time to time, a school district would seek to take back control of its programs from LACOE (takeback). Taking back control of a program would enable the school district to receive funding for administering and overseeing the program and LACOE would lose that funding.

**Appellant's employment and opposition to the southwest SELPA takeback**

Appellant began his career with LACOE on February 14, 2000, when he was hired as an auditor in the internal audit and analysis unit in the internal audit division. He received excellent ratings, and after serving a probationary period, became a permanent employee.

After a few months with LACOE, appellant was promoted to administrative analyst. Later the same year he was promoted to financial operations consultant (FOC) and became the FOC for the southwest SELPA. He was chosen for this position by program directors including John Vinke from Lawndale Elementary School District and Bob Farran, the SELPA director. For the next 12 years appellant served with distinction, receiving numerous commendations from Farran and others.

Whenever a district tried to take back control of its programs from LACOE, Farran would speak to the superintendents' council about the proposed takebacks, and the takebacks were always rescinded. Farran explained to appellant that SELPA takebacks were about control rather than improved quality of education for children with special needs. Appellant believed children who were disabled and those with special needs were being optimally served by LACOE. Appellant observed that

3

when a program was taken from LACOE for administration, officers such as LACOE's then-chief financial officer (CFO) Alex Cherniss would do favors for other officers like Vinke, in order to get referrals, references and political favors that would enable them to enrich themselves. Appellant observed during his employment with LACOE that LACOE employees would sometimes go to work for a SELPA's new administrative unit after being involved in decisions regarding the SELPA's relationship with LACOE. Appellant found this unethical and a conflict of interest and stated his opposition to takebacks due to this ethical concern, among other things.

Southwest SELPA became the largest SELPA while it was administered by LACOE.

After Farran's 2010 retirement, appellant noticed a more aggressive push from districts to take back administrative units from LACOE. Vinke began aggressively trying to take back the southwest SELPA, seeking to replace LACOE with Lawndale Elementary School District as administrator. Vinke was opposed to hearing any information that conflicted with his goal, regardless of it's accuracy.

Appellant spoke to his superiors about the economic consequences of the southwest SELPA takeback, as well as his personal belief there were students and families who would be negatively affected by the takeback. He spoke to his direct supervisor, Zak Memon, as well as Pat Smith.[2] Appellant discussed the potential damage to disabled students and their

---

[2] Smith became CFO of LACOE in 2018. Appellant alleged Smith was appellant's supervisor's supervisor in 2013, and remained so for the next several years, despite changes in appellant's immediate supervisor.

families if the takeback occurred and pointed out the new administrative unit may not have the resources to comply with the legal requirements to educate students with special needs. Smith and Memon told appellant they could do nothing because Dr. Ybarra, who was in charge of LACOE at the time, "did not care if Southwest SELPA left LACOE."

After Vinke complained to LACOE's then-CFO Cherniss that appellant was not supporting Vinke's plans for a takeback, appellant was called into Cherniss's office on two occasions to discuss appellant's opposition to the takeback. Appellant explained to Cherniss his concern that allowing the takeback would impair the education of students with special needs and disabilities and harm their families because LACOE had superior resources to provide the services. Cherniss instructed appellant to "just support John Vinke and the proposed takeback of Southwest SELPA by Lawndale regardless of his beliefs."

In 2013, after the meeting with Cherniss, appellant was called into Smith's office to meet with her and Memon. There, appellant was told he was being replaced immediately as FOC for the southwest SELPA because Cherniss received complaints from Vinke that appellant was not sufficiently supportive of Vinke. The reassignment "constituted an adverse employment action because it was perceived as indicating that he was not performing his duties adequately, . . . and it impaired his ability to promote in the future." Appellant alleges this adverse employment action "was made by Ms. Smith and Mr. Memon directly because of the opposition [appellant] had expressed to the Southwest SELPA takeback because of the negative impact on disabled students."

**Subsequent events**

In January 2014, appellant received a negative writeup from Memon for being absent in December 2013 without submitting an absence claim, when in fact, appellant had submitted an absence claim, which had been approved. Memon told appellant to "watch his back" because Smith and Cherniss had instructed him to write up appellant without warning.

On January 29, 2014, appellant was called into Smith's office where he was reassigned to the division of business advisory services under a different job classification for a limited term appointment. Appellant alleged this constituted an adverse employment action "because it was a dead end" for appellant. When appellant completed all the work assigned to him, and received praise and appreciation from several supervisors, he was inexplicably given a written warning of unsatisfactory performance by the director, Marlene Dunn. The write up contained false allegations and misstatements, which appellant identified and addressed in a rebuttal he submitted on March 21, 2014.

After the writeup and rebuttal, appellant was reassigned to work for supervisor Charles Faulkner, who commended appellant for outstanding performance. In May 2014, appellant was again reassigned to work for "Grants Project Management" (GPM). Appellant was given no training and was placed in a position where he was expected to fail. Within six months of working at the program, Bernadette, whom appellant believes worked under Smith, chastised him for not billing enough hours. Appellant's supervisor allegedly informed appellant he should work on other programs and falsely report those hours, causing appellant to believe he was being set up for allegations of misconduct.

After a year at GPM, appellant's performance was rated as meeting, and often exceeding, the expectations for his position. His performance evaluations for the next several years were similar, showing no performance issues.  In his assignment at GPM, appellant learned not to change any programs started by Smith, as appellant learned that a coworker, Kinglsey Udo, had tried to automate a cash management program without permission from Smith and was then mysteriously walked out the door by security one day and placed on administrative leave for over a year.

Between 2014 and 2016, appellant was required to do the work of two positions because staff members were on long-term leave.  Appellant believes Smith could have alleviated his workload and her failure to do so set him up to fail.  In mid-2015, Smith's office deprived appellant's division of a necessary support accountant.  However, his performance evaluations for the next several years showed no performance issues.

**Appellant's termination and reinstatement**

One of the programs appellant worked on was the "Beginning Teacher Program" (BTP).  On May 25, 2018, appellant, BTP director Mary Dolan and a secretary assigned to the BTP were escorted out of LACOE offices in full view of employees and the general public, causing them humiliation, embarrassment and shame for reasons they were not told at the time.  They were instructed to not contact any of their coworkers, and were placed on-do-not admit lists in all LACOE buildings. Neither Dolan nor the secretary was ever charged with misconduct.

Based on his treatment, and the experiences of Dolan, the secretary, and Udo, appellant alleged it is the custom, policy and

practice of LACOE, through its managers including Smith, to knowingly falsely accuse those who speak against manager's positions involving conflicts of interest, to humiliate those employees by alleging criminal conduct, having those employees "perp walked" out of the building to their cars and ordered not to contact their coworkers, and to place them on leave until an administrative hearing can be held to disprove the allegations.

On November 20, 2018, appellant was informed that he was terminated from his employment at LACOE. He was charged with violations of LACOE rules and regulations pertaining to performance of his position, specifically cash handling procedures. Appellant claims this is a phony basis for termination, arranged by Smith.

Appellant disputed and appealed his termination through LACOE procedures. At the personnel hearing, appellant proved he had followed a cash handling protocol established by Smith herself, the person responsible for bringing the charges. On August 1, 2019, the LACOE personnel commission hearing officer recommended appellant be reinstated to his position with back-pay and benefits, less a five-day suspension. (The suspension was imposed because appellant contacted his coworkers in order to obtain their testimony, which was found to violate the order not to contact coworkers.) The LACOE personnel commission adopted the decision of the hearing officer and LACOE was ordered to return appellant to his position with back pay and benefits, minus a five-day suspension.

Appellant was placed in a new position, rather than being reinstated to his former position. LACOE agents and management continued to assign appellant duties outside the scope of his assigned duties, falsely accuse him of misfeasance,

8

transfer him from one undesirable assignment to another, and take other actions against him he claims, because of his opposition to the takeback of the southwest SELPA.

## PROCEDURAL HISTORY

On November 10, 2020, appellant filed a complaint against LACOE, alleging whistleblower retaliation (Lab. Code, § 1102.5), retaliation for opposing disability discrimination in education (Rehabilitation Act of 1973, 29 U.S.C. § 794(a)), retaliation for opposing disability discrimination in education (Ed. Code, § 56046, subd. (a)), and violation of civil rights under title 42 of the United States Code section 1983 (free speech).

On December 9, 2021, appellant filed the first amended complaint (FAC) that included the same substantive allegations and the same first three causes of action. The fourth cause of action no longer named title 42 of the United States Code section 1983, but instead referenced California Constitution, article 1, section 2 and Civil Code section 52.1. arguing appellant failed to state a cause of action against LACOE and the FAC was uncertain. On May 12, 2022, the trial court sustained the demurrer with leave to amend. The trial court noted appellant did not adequately plead a continuing violation, stating, "Given that there was over a four-year gap between the negative write-up in 2014 and his termination in 2018, [appellant] has not pled that the unlawful acts occurred with reasonable frequency, such that the violations occurring within the statutory timeframe were connected to those occurring beyond the statute of limitations."

On June 2, 2022, appellant filed a second amended complaint (SAC) with the same causes of action. LACOE again demurred. Appellant opposed the demurrer, in which appellant

asked for leave to amend to state a cause of action under title 42 of the United States Code section 1983. Appellant explained this "is the usual statute under which claims of free speech violations are brought," but provided no further elaboration on the proposed new cause of action.

On July 29, 2022, following a hearing, the trial court sustained the demurrer to all causes of action in the SAC without leave to amend. The trial court found the amendments had not changed the deficiency of the pleading in that it still did not sufficiently allege continuing violations.[3] The court found appellant's request for leave to amend to add a new cause of action in his opposition to be procedurally improper. Thus, the demurrer was sustained without leave to amend.

## DISCUSSION

### I. Standards of review

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations." (*Schifando, supra*, 31 Cal.4th at p. 1081.)

---

[3] Appellant claims the trial court erred in sustaining the demurrer on the ground that his causes of action were barred by the statutes of limitation because LACOE did not make this argument in its demurrer. Appellant's argument is not well taken. The court was entitled to raise the statute of limitations issue. (See, e.g., *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 342 ["[A] court may decide on its own motion that it lacks authority over the action because of noncompliance with a jurisdictional rule."].) The court raised the issue in its order sustaining the FAC, giving appellant ample time to address it before the proceedings involving the SAC.

10

"[W]e give the complaint a reasonable interpretation, and read it in context." (*Ibid.*) "If the trial court has sustained the demurrer, we determine whether the complaint states facts sufficient to state a cause of action." (*Ibid.*)

If the demurrer has been sustained without leave to amend, "we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Schifando, supra*, 31 Cal.4th at p. 1081.) "If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Ibid.*)

## II. First cause of action—whistleblower retaliation (Lab. Code, § 1102.5)

### A. *Relevant law*

Labor Code section 1102.5 states:

"(a) An employer, . . . shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information . . . to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of [laws, rules or regulations].

"(b) An employer, . . . shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, . . . to a person with authority over the employee or another employee who has the authority to investigate, discover,

11

or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of [laws, rules or regulations]."

"By its terms, [Labor Code] section 1102.6 describes the applicable substantive standards and burdens of proof for both parties in a [Labor Code] section 1102.5 retaliation case . . . ." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 712 (*Lawson*).) "First, it must be 'demonstrated by a preponderance of the evidence' that the employee's protected whistleblowing was a 'contributing factor' to an adverse employment action. (§ 1102.6) Then, once the employee has made that necessary threshold showing, the employer bears 'the burden of proof to demonstrate by clear and convincing evidence' that the alleged adverse employment action would have occurred 'for legitimate, independent reasons' even if the employee had not engaged in protected whistleblowing activities." (*Ibid.*)

Labor Code section 1102.5 does not contain a specific limitations period applicable to claims brought under the statute. Various statutes of limitation may be applicable. Since the statute expressly provides for a civil penalty, courts have applied the statute of limitations found in Code of Civil Procedure section 340, subdivision (a), which provides that "[a]n action upon a statute for a penalty or forfeiture" must be brought within one year. (See, e.g., *Delgado v. MillerCoors LLC* (C.D.Cal. Mar. 16, 2017, CV 16-5241DMG(ASX)) 2017 U.S. Dist. Lexis 43482 [2017 WL 1130165 at *4]; *Pruitt v. Genentech, Inc.* (E.D.Cal. Aug. 23, 2017, No. 2:17-cv-00822-JAM-AC) 2017 U.S. Dist. Lexis 136258 [2017 WL 3641783 at *1].) Common law claims for wrongful

termination or retaliation in violation of public policy are subject to a two-year statute of limitations. (*Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th 1174, 1189, fn. 14.) Notwithstanding the penalty provision, other courts have held that if the claim is limited to one for damages, the applicable statute of limitations is Code of Civil Procedure section 338, subdivision (a), which provides a three-year limitations period for "[a]n action upon a liability created by statute." (See, e.g., *Ayala v. Frito-Law, Inc.* (E.D.Cal. 2017) 263 F.Supp.3d 891, 916-917; *Minor v. FedEx Office & Print Services* (N.D.Cal. 2016) 182 F.Supp.3d 966, 988.)

The continuing violations doctrine "allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 802 (*Richards*).) To prove a continuing violation, a plaintiff must show that the employer's unlawful actions are "(1) sufficiently similar in kind . . . ; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence." (*Id.* at p. 823.) The term "permanence" means "an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile." (*Ibid.*) "[T]he employer that creates or permits a persistent pattern of harassment . . . even if such pattern or failure does not rise to the level of constructive discharge, cannot complain of delay when the employee retains employment in hopes that informal conciliation will succeed." (*Id.* at p. 822.) However, when "'the hope that conditions will improve or that informal conciliation may succeed' . . . is unreasonable, as when an employer makes clear that it will not further accommodate an

13

employee, justification for delay in taking formal legal action no longer exists." (*Id.* at p. 823.)

### B. *Relevant allegations*

In 2013, appellant expressed opposition to takebacks of special education programs by local school districts. Specifically, the same year, he vocally opposed the southwest SELPA takeback proposed by Lawndale Elementary School District. He did so by speaking with his superiors, including Smith and Memon, who were unreceptive to appellant's information since they supported Vinke and his plan to allow the southwest SELPA to be taken from LACOE. In addition, appellant was called into then-CFO Cherniss's office on two occasions to discuss appellant's opposition to the takeback. Cherniss instructed appellant to stop opposing the takeback, regardless of his beliefs. Also in 2013, after the meetings with Cherniss, appellant was called into a meeting with Smith and Memon, where appellant was told he was immediately being released as FOC for the southwest SELPA because he was not sufficiently supportive of Vinke. Appellant alleges this reassignment was an adverse employment action, made directly because of appellant's opposition to the southwest SELPA takeback.

In January 2014 appellant was cited under false pretenses by Memon, who told appellant to "watch his back" because Smith and Cherniss had instructed Memon to write up appellant without warning. In January 2014, appellant was transferred by Smith to a different job classification for a limited term employment. Appellant alleges this was an adverse employment action because it was a dead end job for him. At this position, he was inexplicably given a written warning of unsatisfactory performance by the director Dunn. The warning was based on a

14

false statement of facts. Appellant was allowed to file a rebuttal, but was again transferred.

In May 2014, appellant was assigned to GPM, where he was required to cover the work of two positions and was deprived of adequate staffing. He perceived that he was being set up to fail. Despite these hindrances, appellant received a performance evaluation indicating he was meeting or exceeding the expectations for his position.

The next adverse employment action alleged took place on May 25, 2018, when appellant was escorted out of the building and terminated on November 20, 2018. Appellant learned he had been accused of violating the cash-handling protocol established by Smith. Appellant denied the allegations, appealed his termination, and was reinstated with back pay, though not to his former position but to a different position. Appellant remains employed by LACOE. He alleges management and supervisory employees continue to assign him duties outside the scope of his assigned duties, falsely accuse him of misfeasance, transfer him from one undesirable assignment to another, and take other actions against him because of his opposition to the southwest SELPA takeback in 2013.

C.    ***Application of law to allegations***

1.    *Statute of limitations*

Appellant engaged in the alleged protected act of protesting the southwest SELPA takeback in 2013. He alleges that he was retaliated against that same year through reassignment, and then suffered negative feedback and another transfer in 2014 to a position in which he felt he was being set up to fail. Appellant was directly informed that the initial transfer was based on his

15

alleged protected activity of protesting the takeback in opposition to the plans of Vinke.

Despite appellant's understanding that his superiors were engaging in retaliation in 2013 and 2014, appellant did not file his complaint against LACOE until November 2020. Regardless of which statute of limitations applies, appellant's complaint is barred by the statute of limitations unless his complaint alleges facts supporting a theory of continuing violations.

**2.** *Continuing violations doctrine*

Appellant was required to allege facts showing all three elements of the continuing violations doctrine.[4]

First, appellant was required to show that the alleged actions against him within the limitations period were sufficiently similar in kind to those outside of the limitations period. (*Richards, supra*, 26 Cal.4th at p. 823.) Appellant asserts all the actions taken against him over the years were similar in kind because they were all intended to remove appellant from his employment. He was transferred, overworked, and not provided adequate support, in the hope such actions would cause a voluntary resignation. Appellant alleges all such acts were directed by Smith, who was, at all times, appellant's supervisor or in the direct line of supervision over him. Appellant asserts all

---

[4] While we have declined to decide which of the potentially applicable statutes of limitation applies here, we assume, for the purposes of this discussion, that the three-year statute applies. Appellant's complaint was filed in November 2020. Therefore, in order for the continuing violations doctrine to apply, appellant was required to allege conduct occurring between November 2017 and November 2020. Appellant's May 2018 removal and November 2018 termination are the only specifically alleged acts that fall within this three-year time frame.

16

actions were based on false allegations regarding performance. Appellant admits that all such acts may not be actionable in and of themselves, but are evidence of continuing course of conduct. Appellant cites *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1058 (*Yanowitz*), for the proposition that "a series of separate retaliatory acts collectively may constitute an 'adverse employment action' even if some or all of the component acts might not be individually actionable."

Appellant's allegations fail to show that the single allegedly retaliatory act occurring within the limitations period—his removal in 2018—was sufficiently similar in kind to the previous alleged acts. Appellant was informed that the 2018 suspension and subsequent termination were related to purported violations of cash handling procedures. The acts of suspension and termination were more severe than previous alleged retaliatory acts, and involved other employees who are not alleged to have given LACOE reason to retaliate. Given the stated rationale, the comparative severity of the action taken against appellant and the inclusion of other individuals who had not engaged in whistleblowing, the element of similarity is missing.

Regardless of whether LACOE's alleged acts were sufficiently similar in kind, the *Yanowitz* court's rationale for allowing discrete, nonactionable acts to form a continuing violation is not applicable here. The *Yanowitz* court explained, "A rule that would force employees to bring actions for 'discrete acts' of retaliation that have not yet become ripe for adjudication, and that the employee may not yet recognize as part of a pattern of retaliation, is fundamentally incompatible with the twin policy goals of encouraging informal resolution of disputes and avoiding premature lawsuits . . . ." (*Yanowitz, supra*, 36 Cal.4th at

17

p. 1058.) Appellant cannot argue he did not recognize the acts that occurred between 2013 and 2016 as retaliation. He was expressly told, in 2013, that his purported whistleblowing, in the form of opposing the southwest SELPA takeback, was the reason for the initial retaliatory act of transferring him to a less desirable position. Thus, he cannot claim he did not recognize the alleged pattern of retaliation. His retaliation claim was ripe for adjudication in 2013, and the subsequent acts did not amount to a continuing violation.

Nor has appellant alleged that the purported acts of retaliation occurred with reasonable frequency. Despite his allegations of various discrete acts making his job more difficult from 2014 through early 2016, when he was denied necessary support staff, he alleges no retaliatory acts at all between January 2016 and May 25, 2018, when he was escorted out of LACOE offices. Generally "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be 'very close.'" (*Clark County School Dist. v. Breeden* (2001) 532 U.S. 268, 273; see *id.* at p. 274 [holding "[a]ction taken . . . 20 months later suggests, by itself, no causality at all"].) The two-year interruption in the alleged pattern of continuing violations undermines appellant's claim of reasonable frequency.

Finally, appellant was required to show that the retaliatory acts had not acquired a degree of permanence. (*Richards, supra*, 26 Cal.4th at p. 823.) As set forth above, appellant knew in 2013 that the initial alleged retaliatory act was carried out due to appellant's decision to voice his objection to the southwest SELPA takeback. He was frankly told he was being transferred

18

because he was not supportive enough of Vinke's bid to take back the southwest SELPA. He specifically alleged that this transfer "constituted an adverse employment action" because it "impaired his ability to promote in the future." The transfer was carried out and never rescinded. In other words, it was permanent. There are no allegations that appellant could have perceived LACOE's actions as anything other than definitive and final. Thus, his claim of retaliation for whistleblowing was ripe in 2013. (See, e.g., *Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1127.)

Appellant has failed to sufficiently allege a continuing violation starting with his alleged protected acts in 2013. Therefore, his claim for whistleblower retaliation is barred by the statute of limitations, and the demurrer was properly sustained as to this cause of action.[5]

## III. Second cause of action—retaliation for opposing disability discrimination under the Rehabilitation Act

Title 29 United State Code section 794(a) provides in relevant part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

---

[5] Because we have determined that appellant's whistleblower retaliation claim is barred as a matter of law, we decline to address the parties' arguments regarding whether appellant demonstrated the specific requirements of Labor Code section 1102.5, subdivision (b), including whether he demonstrated that he was "providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry," and whether he had reasonable belief that there had been a violation of law.

benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

The Rehabilitation Act does not specify its own limitations period. "'The Supreme Court has clearly held that in the absence of a federal statute of limitations . . . the controlling statute of limitations is the most appropriate one provided by state law.'" (See *Daviton v. Columbia/HCA Healthcare Corp.* (9th Cir. 2001) 241 F.3d 1131, 1135.) Courts generally apply the forum state's personal injury statute of limitations to Rehabilitation Act claims. (*Ibid.*) In California, the personal injury statute of limitations is two years. (Code Civ. Proc., § 335.1.) Therefore, appellant's Rehabilitation Act claim is subject to a two-year statute of limitations.

Because appellant filed his complaint more than two years after LACOE's purported act of disability discrimination, and has failed to allege facts showing a continuing violation, appellant's second cause of action is barred as a matter of law, and the demurrer was properly sustained.

Because the demurrer was properly sustained on the ground that the claim is time-barred, we decline to address the parties' competing arguments as to whether appellant has standing to bring a claim under the Rehabilitation Act.

## IV. Third cause of action—retaliation for opposing disability discrimination under Education Code section 56046, subdivision (a)

Education Code section 56046, subdivision (a), provides that "[a]n employee of a local educational agency shall not directly or indirectly use or attempt to use the official authority

20

or influence of the employee for the purpose of intimidating, threatening, coercing, or attempting to intimidate, threaten, or coerce, any person, including, but not limited to, a teacher, a provider of designated instruction and services, a paraprofessional, an instructional aide, a behavioral aide, a health aide, other educators or staff of the local educational agency, a private individual or entity under contract with the local educational agency, or a subordinate of the employee, for the purpose of interfering with the action of that person at any time, to assist a parent or guardian of a pupil with exceptional needs to obtain services or accommodations for that pupil."

Education Code section 56046 does not contain a specific time limit for filing suit. However, as it contains an administrative remedy, the most analogous statute would appear to be the two-year limitations period for seeking administrative relief regarding special education cases in Education Code section 56505, subdivision (*l*). Appellant asserts that this cause of action should have a three-year statute of limitations based on Code of Civil Procedure section 338, subdivision (a), which pertains to "[a]n action upon a liability created by statute, other than a penalty or forfeiture."[6]

Regardless of whether the applicable statute of limitations is two years or three years, appellant's Education Code claim is

---

[6] Appellant argues that the trial court determined the applicable statute of limitations without notice to appellant nor an opportunity to address the issue at the time. However, appellant points to no citation to the record suggesting that appellant objected or sought more time to address this issue at the trial court level. For that reason, appellant's objection is forfeited. (*People v. Valdez* (2012) 55 Cal.4th 82, 142.)

time-barred. Appellant's communications with Smith regarding his concerns about SELPA takebacks, and in particular the southwest SELPA takeback, took place in 2013. Smith's alleged retaliation was immediate, obvious and permanent. As set forth in detail above, appellant failed to sufficiently allege a continuing violation. Therefore, the demurrer was properly sustained as to appellant's third cause of action.

Because the demurrer to the third cause of action was properly sustained on the ground that it was untimely, we need not address the parties' competing arguments regarding whether appellant has standing under the statute and whether the statute permits a private right of action.

## V. Fourth cause of action—civil rights under California Constitution, article 1, section 2 and Civil Code section 52.1

Appellant's fourth cause of action is for deprivation of civil rights under the California Constitution and Civil Code section 52.1, which is part of the Tom Bane Civil Rights Act (Bane Act). Appellant alleges that LACOE violated his right to free speech under these laws.

Civil Code section 52.1, subdivision (b) provides, in part: "If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California . . . ."

22

Civil Code section 52.1, subdivision (c), provides: "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (b), may institute and prosecute in their own name and on their own behalf a civil action for damages . . . ."

This cause of action is subject to the two-year limitations period under Code of Civil Procedure section 335.1. (*Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 760.)

Appellant argues that his allegations show that LACOE violated his right to free speech. He asserts he was coerced, through the transfers, excess workload, denial of support, and other acts detailed in the SAC. Such acts coerced him into staying quiet.

As set forth in detail above, appellant's claim was ripe when Smith allegedly openly retaliated against him for speaking out in 2013. Because he has filed this cause of action outside of the applicable two-year statute of limitations, the demurrer was properly sustained.

Because appellant's claim is time-barred, we decline to address the parties' competing arguments concerning whether appellant has stated a valid claim under the Bane Act.

## VI.   Denial of leave to amend

Appellant asserts that the trial court abused its discretion in denying leave to amend so that appellant can attempt to state a claim under title 42 United States Code section 1983. Section 1983 is the procedural vehicle by which a plaintiff may bring claims concerning deprivations of constitutional rights, including free speech, by persons acting under color of law. (*Heffernan v.*

*City of Paterson* (2016) 578 U.S. 266, 271.)  Appellant asserts that he could have stated a cause of action under section 1983 under the same facts used for the Bane Act claim.

Claims brought under title 42 United States Code section 1983 are subject to the two-year statute of limitations found in Code of Civil Procedure section 335.1.  (*Jackson v. Barnes* (9th Cir. 2014) 749 F.3d 755, 761.)  Appellant cannot state a claim under U.S.C. § 1983 because it is time-barred.  The trial court did not abuse its discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs of appeal.

_____

CHAVEZ, J.

We concur:

_____

LUI, P. J.

_____

ASHMANN-GERST, J.

24